**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sim Ed MOREE, Defendant–Appellant.**

No. 89–4204.

United States Court of Appeals,
Fifth Circuit.

March 29, 1990.

Julie Ann Epps, Rienzi, Miss. (court appointed), for defendant-appellant.

Richard T. Starrett, Asst. U.S. Atty. and George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before CLARK, Chief Judge, and THORNBERRY and JONES, Circuit Judges.

CLARK, Chief Judge:

## I.

Sim Ed Moree appeals his conviction for conspiracy to obstruct justice (18 U.S.C. § 371) and endeavoring to obstruct justice (18 U.S.C. § 1503). Moree also appeals the sentence imposed under the Sentencing Guidelines. We affirm the conviction but remand for resentencing.

## II.

In 1987 Robert Joiner, then Highway Commissioner for the Southern District of Mississippi, was indicted on eleven counts of extortion, bribery, and tax evasion. Earlier that year a federal grand jury had indicted Sim Ed Moree, a supervisor in Marion County, Mississippi, on charges of malfeasance while in public office. The indictments of both men occurred as part of "Operation Pretense," an investigation into corruption among Mississippi's public officials by the Federal Bureau of Investigation ("FBI").

In December 1987, Moree's original indictment was dismissed without prejudice to allow the government to list additional charges. After the dismissal and before he was reindicted, Moree approached Joiner with the story that the dismissal of his indictment had been secured by certain persons for a fee of $25,000. For $160,000, Moree claimed, these same persons would "fix" Joiner's case so that he would receive a maximum three-year sentence with two years suspended and a $25,000 fine. Moree told Joiner that he could not name these individuals and that they would work only through Moree. Joiner reported the offer to his attorney, who contacted the FBI.

With Joiner's cooperation, Agent King of the FBI conducted surveillance of conversations and meetings between Joiner and Moree which produced six audio tapes of Moree discussing the same offer with Joiner. Moree never divulged the identity of any co-conspirator. The FBI did learn that Moree's brother, Ben Moree, watched Joiner's car during two of the meetings and followed Joiner after one of the meetings. During their third meeting, Moree accepted from Joiner $50,000 in cash which had been provided by the government. When Moree left the motel room, King arrested him. King then walked across the road to Ben Moree, who had been watching Joiner's car from his parked truck. Ben told King that he did not know the purpose of the meetings between his brother and Joiner, but that Sim Ed had told him to watch Joiner's car.

Sim Ed Moree was convicted of conspiring to obstruct justice and endeavoring to obstruct justice. In sentencing Moree, the court increased his base offense level two points based on a finding that Joiner was an especially vulnerable victim. Moree was sentenced to twenty-one months in prison on each count. These sentences were to run concurrently but consecutively with a sixty-month term imposed for separate convictions of extortion and conspiracy to commit mail fraud. Moree appeals both his conviction and sentence.

## III.

### A. Sufficiency of the Evidence

Moree first contends that the evidence adduced was insufficient to allow a jury to find him guilty beyond a reasonable doubt of the conspiracy charge. The government contends that the record shows Moree had conspired with Tommy Wallace, an acquaintance of Joiner's who arranged the first meeting between Joiner and Moree, Ben Moree, who kept surveillance on Joiner, and the unnamed contacts who Moree claimed would fix Joiner's trial.

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) sets this standard for gauging sufficiency of the evidence: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). Because the government produced sufficient evidence to form a rational basis for the jury's adjudication of Moree's guilt, we affirm.

Moree asserted on several occasions that he could fix Joiner's trial with the assistance of the unnamed co-conspirators. The only evidence that in any way questions these statements was agent King's testimony that the FBI had not ascertained the identities of these parties. The jury also knew King had expressed to the grand jury the opinion that Moree did not have the intention or ability to fix Joiner's case.

■■■■ A conspiracy conviction does not depend on the identification of the co-conspirators. The co-conspirators need not be identified as long as evidence supports "the proposition that such a co-conspirator did exist and that the defendant did conspire with him." *United States v. Pruett,* 551 F.2d 1365, 1369 (5th Cir.1977). See *Rogers v. United States,* 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951). Moree's repeated assertions that he would fix Joiner's trial with the help of his unnamed co-conspirators and the observed conduct of Ben Moree in surveiling Joiner during meetings with Sim Ed Moree provided sufficient evidence under the standard of *Jackson v. Virginia* to support his conspiracy conviction.

### B. Hearsay Evidence

■■■■ Neither Sim Ed nor Ben Moree testified at trial. Evidence of Ben Moree's involvement in Sim Ed's activities was produced during the testimony of King and Joiner, both of whom observed Ben's surveillance activities. When asked if Ben Moree stated who had asked him to remain at the motel, King testified, "[a]t his brother's request. He told me that he was there both days at his brother's request." Defendant entered a continuing objection to this line of testimony. King later testified: "He [Ben Moree] said his brother asked him to—on the 4th, to watch out for Mr. Joiner's car and just keep a look on it. And I said, well—and I verified the fact he followed Mr. Joiner when Mr. Joiner left the motel out towards Hattiesburg." Defendant's objection to this latter statement was sustained.

Moree contends that the statement asserting that Ben Moree was acting in concert with Sim Ed was improperly admitted hearsay. At trial the government argued that the testimony was non-hearsay under the exception provided in Fed.R.Evid. 801(d)(2)(E) as the statement of a co-conspirator during or in furtherance of the conspiracy. The government now withdraws that argument, conceding that since Sim Ed Moree had already been arrested, any conspiracy was over by the time Ben's statement was made.

The government now argues that the admission of the hearsay testimony was harmless error when viewed in light of the entire record. We agree. The record shows that the hearsay testimony was only a small part of the evidence put forward by the government to convince the jury that Sim Ed Moree had conspired with other persons to obstruct justice. We have stated:

> [t]o require a new trial, the prejudicial effect of improper matter, viewed in the context of that particular trial, must not be overwhelmed by evidence of guilt. A

significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the stricken statement had a substantial impact upon the verdict of the jury. *United States v. Arenas–Granada,* 487 F.2d 858, 859 (5th Cir.1973). See, e.g., *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (The verdict must be left in "grave doubt" to require reversal due to an improperly admitted statement.). The statement admitted here does not create such doubt in the verdict of the jury.

Additionally, the erroneously admitted hearsay testimony did not provide the jury with information that would allow them to find Sim Ed guilty of conspiracy with his brother alone. The trial judge instructed the jurors that a finding of conspiracy could not be based on the actions of a second person who did not have knowledge of the conspiracy. All that the hearsay could have proven was that Ben Moree watched Joiner at Sim Ed's request. Ben's knowledge of the purpose of Sim Ed's activities was not proven. King's hearsay testimony did not supply any essential element of the crime of conspiracy to the jury. Thus, the admission of the testimony which did not affect any substantial right of Sim Ed Moree was harmless error. See Fed.R. Civ.P. 61.

## C. Evidence of the Obstruction of Justice

■ Moree contends that the government produced insufficient evidence to convict him of endeavoring to obstruct justice under 18 U.S.C. § 1503. He states that no proof was offered of his ability or intention to fix Joiner's trial or of his ability to foresee the danger to the public's right to try Joiner which the success of his scam would cause. Moree's contention is frivolous. It is hard to imagine a more invidious obstruction of justice than an offer to bribe officials in control of the judicial system to fix the result of a trial. Had Moree's scam succeeded in deceiving Joiner, it cannot be seriously doubted that Joiner would have taken a different approach to his trial, including the entry of a falsely-in-

duced guilty plea. Nor can it be doubted that Moree could foresee these unprofitable consequences for Joiner. The jury was presented with sufficient evidence to find Moree guilty of endeavoring to obstruct justice. See *United States v. Silverman,* 745 F.2d 1386, 1393 (11th Cir.1984); *United States v. Neiswender,* 590 F.2d 1269, 1273 (4th Cir.), cert. denied, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979).

## D. The Indictment

Moree claims that the following jury instruction constructively amended his indictment:

> If you find that the defendant, Moree, attempted to induce Joiner to part with money *and to plead guilty* on a false promise to insure a more lenient sentence, then you may find, but are not required to so find, that this constituted an endeavor to obstruct justice (emphasis added).

The indictment does not expressly state that Moree sought to induce Joiner to plead guilty. However, such an inducement was a necessary part of the conspiracy charged. The indictment basically asserted that Moree "did knowingly and willfully conspire ... to corruptly endeavor to obstruct and impede the due administration of justice as prohibited by Section 1503, Title 18, United States Code." The indictment then lists a number of actions by Moree that became parts of the conspiracy. These include a promise that unknown co-conspirators could guarantee a reduced term of imprisonment and fine in Joiner's case in return for a payment of $160,000.00. This guarantee reasonably assumed a sham trial in which Joiner would plead "guilty" to secure the fixed deal of a lesser sentence and fine.

■ An indictment is not required to expressly set out every action of the defendant which may have contributed to the commission of the crime charged. Rather, the chief purposes of an indictment are to apprise the defendant of the specific charges he will be asked to rebut at trial and to protect him against double jeopardy.

*Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). We have stated that a constructive amendment of the indictment is reversible error when "the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir.1985). See *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

■ A mere variance in language between proof and the explicit language of the indictment which does not constitute the modification of an essential element of the offense charged is not error. *Adams*, 778 F.2d at 1123. The trial court properly framed the jury charge in terms of the proof.

■ The jury charge here did not effectively modify any essential element of the offense charged. The charge was conspiracy to obstruct justice. The indictment asserted that parts of that conspiracy were to fix Joiner's trial so that his punishment would be within a reduced range in exchange for the payment of money. The fact that Joiner would have to plead guilty to get the fixed sentence and fine was an essential component of the entire scheme for which Moree was indicted.

The jury could not reasonably have rested its conviction of Moree solely on the fact that he solicited Joiner's guilty plea. In this connection, we note not only that extensive evidence of Moree's fraudulent operation was produced at trial, but also that the questioned jury instruction was given in the conjunctive. In order to find Moree guilty by following the instruction, the jury had to find that Moree had "induce[d] Joiner to part with money *and* to plead guilty." This neither amended nor varied the indictment. It merely made explicit what the proof had already demonstrated was implicit in the indicted conspiracy. The assertion of a variance between the indictment and the proof offered at trial and the jury instructions must also fail because any such variance could have in no way harmed Mor-

ee. See *United States v. Gibson*, 820 F.2d 692, 700 (5th Cir.1987).

### E. Testimony of Prior Activities

As part of the government's proof, Sam Perniciaro, Sr., a former supervisor in Hancock County, Mississippi, who was also facing criminal charges, testified that two weeks before the bribe offer to Joiner, Moree contacted him and offered to fix his trial for $55,000.

Moree submitted a motion in limine to exclude Perniciaro's testimony as inadmissible character evidence under Fed.R.Evid. 404 and as more prejudicial than probative under Fed.R.Evid. 403. The district court denied the motion, stating that Perniciaro's testimony would likely "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The court also balanced the value of the testimony against the possible prejudice to the defendant and found the evidence should not be excluded.

The decision of the district court to admit Perniciaro's testimony is not reversible error unless the admission was an abuse of the court's discretion. *United States v. Henthorn*, 815 F.2d 304, 308 (5th Cir.1987). We agree with the district court that the evidence was relevant to Moree's intent and knowledge.

Perniciaro's testimony depicts a striking similarity between Moree's activities toward Perniciaro and his offer two weeks later to Joiner. In both schemes Moree was introduced to the intended victim by a third party, and Moree planned to meet the victim at a motel. Moree told both Perniciaro and Joiner that his indictment had been dismissed and that he could arrange the dismissal of their indictments for a substantial payment to be made in cash, one-half at the time of the deal and one-half when the indictment was dismissed. Although Moree did not specifically mention his co-conspirators to Perniciaro, at the end of their conversation he did state: "Well, we're waiting to hear from you." While speaking with Joiner two weeks later, Mor-

ee mentioned his previous attempt to aid another indicted suspect.

█ The evidence of Moree's actions toward Perniciaro was probative of Moree's intent to conspire to obstruct justice in the scheme involving Joiner. Moree's intent became an issue in the trial when he pled not guilty to the conspiracy charge. We have stated that in every conspiracy case, "a not guilty plea renders the defendant's intent a material issue." *United States v. Roberts*, 619 F.2d 379, 383 (5th Cir.1980). See *United States v. Henthorn*, 815 F.2d 304, 308 (5th Cir.1987); *United States v. Gordon*, 780 F.2d 1165, 1174 (5th Cir.1986). Evidence of prior extrinsic acts is relevant to the intent manifested by the defendant during the offense for which he is charged if two criteria are met. *United States v. Beechum*, 582 F.2d 898, 909–16 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). First, the intent required to make the previous activity illegal must be the same intent required to convict the defendant of the offense charged. Second, the proof of the prior act must be sufficient to satisfy Fed. R.Evid. 104(b); that is, the evidence must be sufficient to support a finding that the act occurred. If these conditions are met, then "[t]he extrinsic offense is relevant (assuming the jury finds the defendant to have committed it) to an issue other than propensity because it lessens the likelihood that the defendant committed the charged offense with innocent intent." *Beechum*, 582 F.2d at 913.

█ The evidence included in Perniciaro's testimony passes the Beechum test. The intent necessary to conspire to obstruct justice by fixing Perniciaro's indictment is the same intent necessary to accomplish the same task for Joiner. Perniciaro's direct testimony of Moree's activities supplied evidence sufficient to support a finding that Moree had offered to fix Perniciaro's indictment. Therefore, Perniciaro's testimony of Moree's extrinsic acts was relevant to show Moree's intent during his conversations with Joiner.

Additionally, Perniciaro's testimony was admissible because it is relevant to the knowledge displayed by Moree in conspiring to obstruct justice in Joiner's case. In order to be admissible for this purpose, "[t]he extrinsic offense need merely be of such a nature that its commission involved the same knowledge required for the offense charged." *Beechum*, 582 F.2d at 912 n. 15. In both cases, Moree had to know the identity and official capacity of the victims, the status under indictment of the victim's case, especially within the context of Operation Pretense, and the method of surreptitiously fixing, or of claiming the ability to fix, an indictment. The similarity between the physical elements of the two episodes emphasizes the common knowledge necessary to plan and implement each scheme.

### F. Sentence

Moree's Sentencing Guidelines base offense level of twelve was enhanced by two points under § 3A1.1, the "vulnerable victim" enhancement provision. That provision states: "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase [the base offense level] by 2 levels." Moree now claims that this enhancement was improper because Joiner never actually became a victim of Moree's offer and because Joiner did not fit the guideline definition of a "vulnerable victim." We agree that Moree's offense level was improperly enhanced.

█ A condition that occurs as a necessary prerequisite to the commission of a crime cannot constitute an enhancing factor under § 3A1.1. The vulnerability that triggers § 3A1.1 must be an "unusual" vulnerability which is present in only some victims of that type of crime. Otherwise, the defendant's choice of a likely victim does not show the extra measure of criminal depravity which § 3A1.1 intends to more severely punish. An armed robbery of a blind, elderly, or physically disabled shopkeeper would normally trigger § 3A1.1, because the additional vulner-

ability of handicap or age has been exploited. On the other hand, neither a businessman nor a bank should be considered unusually vulnerable to armed robbery merely because the bank robber knows they have cash on hand or may have some breach in their security system. Here, Moree's activities focused on Joiner because he had previously been indicted, not because of any perceived mental or physical vulnerability. Joiner surely was put on the defensive by his indictment, but he did not suffer from any unusual physical or mental problems, nor was his age a factor in Moree's scheme. His only particular susceptibility to the crime was his prior indictment. That vulnerability made the attempted crime possible but his indictment did not make Joiner an unusually vulnerable victim. The district court erred in enhancing Moree's sentence under § 3A1.1.

## IV.

The judgement of the district court as to guilt is AFFIRMED. The sentence imposed by the district court is VACATED and the case is REMANDED.