946 F.2d 888
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Allen Boyd QUEEN, Defendant-Appellant.
 No. 90-5534.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1991.
Decided Oct. 21, 1991.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Bryson City. Richard L. Voorhees, Chief District Judge. (CR-90-93-B)
 Argued: Stephen Paul Lindsay, Lindsay & True, Asheville, N.C., for appellant; Thomas Richard Ascik, Assistant United States Attorney, Asheville, N.C., for appellee.
 On Brief: Thomas J. Ashcraft, United States Attorney, Asheville, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The defendant, Allen Boyd Queen, was found guilty in the district court on the second and third counts of a three count indictment, and was sentenced to a forty-one month term of imprisonment. The second count of the indictment charged him with assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(c) & 1153. The third count involved forcible assault with a deadly weapon upon a Cherokee Police officer, in violation of 18 U.S.C. §§ 111(a)(1) & (b). On appeal, the defendant raises several claims of error with respect to his conviction on count two and the determination of his sentence. We are of opinion that these claims are without merit and affirm the judgment of the district court.
 
 
 2
 Testimony presented to the jury at the defendant's trial indicated that the events underlying this case occurred on the night of March 31, 1990. At approximately 11:30 p.m., Officer Jack Beck of the Cherokee Indian Police Department responded to a call directing him to the residence of Debbie Arch in Cherokee, North Carolina. According to Officer Beck's testimony, he arrived at the residence and was requested to enter through a side door. Upon entering the house, Officer Beck saw the defendant sitting side by side with Debbie Arch on a couch. He observed that the defendant had his hands "sort of folded" in his lap and was sitting "very close" to Mrs. Arch.
 
 
 3
 Further testimony described events preceding the arrival of Officer Beck. The defendant, who lived with Debbie Arch in her home along with Mrs. Arch's eleven year-old daughter from a previous marriage, had been sitting and watching television with Mrs. Arch and her daughter. At some point, the defendant became angry and threw a boot at the two women. The defendant then proceeded to begin striking Mrs. Arch. The daughter left the scene and went to a neighbor's house to call the police. During this time, according to the testimony of Mrs. Arch, the defendant was holding a knife in his hand and, when he realized that Officer Beck was approaching through the yard of the residence, instructed Mrs. Arch to sit down on the couch and tell the officer that "everything was okay." The defendant sat down next to her.
 
 
 4
 According to the testimony of Officer Beck, when he arrived and saw the defendant sitting with Mrs. Arch, he asked what the problem was. He also asked Mrs. Arch if she would like to be taken some place else and return later to resolve the situation. When the defendant looked up towards the officer, Mrs. Arch "jumped up to run" away from the couch and towards the direction from which the officer had entered. As she was moving away, Officer Beck saw in the defendant's right hand an open blade knife, which he swung at the back of Mrs. Arch as she was fleeing. The officer told the defendant to stop and approached him until the defendant turned upon the officer and twice swung his knife at the officer's chest. Officer Beck eluded these knife thrusts and, after drawing his gun, was able to subdue the defendant.
 
 
 5
 The defendant's first claim raised on this appeal is that there is insufficient evidence to sustain his conviction on count two of the indictment, which charged that he assaulted Debbie Arch with a deadly weapon. The defendant points to the instruction given by the trial judge to the jury and argues that the prosecution failed to show that the defendant had given Mrs. Arch "reason to fear or expect immediately bodily harm, or a reasonable apprehension of immediate bodily harm...." The basis for this contention is the testimony of Mrs. Arch that as she was moving away from the defendant, she did not see him swing his knife at her.
 
 
 6
 We conclude, however, that there was substantial evidence presented to the jury to support the conclusion that the defendant did indeed place Debbie Arch in reasonable apprehension of immediate bodily injury. Both Mrs. Arch and her daughter testified that prior to Officer Beck's arrival, the defendant had thrown a boot at Mrs. Arch and had been striking her. There was further testimony that the defendant was holding in his hand a deadly weapon in plain view of Mrs. Arch. With this knife in his possession, the defendant then instructed Mrs. Arch to sit down on the couch, told her what to say to the police, and positioned himself "very close" to her. When Officer Beck came upon the scene, he judged that the defendant was "holding something to keep her from leaving." The jury also had before it testimony that Mrs. Arch "jumped" up to run away from the defendant, an action from which it might reasonably have inferred that she was afraid or apprehensive of bodily harm. This fear, moreover, was reasonable in light of the evidence concerning the presence of the knife and the defendant's earlier attacks upon her.
 
 
 7
 We are therefore of opinion that the record contains substantial evidence, when viewed in the light most favorable to the government, to support the conclusion that the defendant assaulted Debbie Arch with a deadly weapon, with intent to do bodily harm, and without just cause or excuse. See Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 8
 The second argument raised by the defendant concerns the admission into evidence of a clump of hair found on the floor of Mrs. Arch's living room. The defendant argues that it was reversible error for the district court to allow Detective Beck to testify that he found the hair in Mrs. Arch's residence and that Mrs. Arch had pointed to this hair and stated that the defendant had pulled it out of her head prior to the officer's arrival. Without considering the merits of the defendant's arguments concerning the admissibility of this hair and Mrs. Arch's statements concerning it, we believe that any error in this respect was harmless. The issue affected by the introduction of this evidence was the defendant's treatment of Mrs. Arch prior to the arrival of Officer Beck. Other evidence, presented by two separate witnesses, showed that the defendant had subjected Mrs. Arch to two physical attacks and was sufficient to establish that her apprehension of further bodily injury when the defendant sat next to her holding a concealed knife was reasonable. Also, this is corroborated by the defendant's swinging at Mrs. Arch with the knife in the presence of the officer. We believe, with fair assurance, that the jury's judgment was not substantially swayed by the introduction of the evidence and find it highly probable that any error in its admission did not affect the judgment. See United States v. Urbanik, 801 F.2d 692, 698-99 (4th Cir.1986).
 
 
 9
 The defendant's next allegation of error challenges the district court's two point upward adjustment based upon the finding that his victim was "particularly susceptible" to his criminal conduct. See U.S.S.G. § 3A1.1.[1] The government's justification for this enhancement, which the district court accepted, was based upon the idea that Debbie Arch's emotional ties to the defendant made her vulnerable and particularly susceptible. Mrs. Arch testified that she had been living with the defendant for over eight years and stated during trial that she loved the defendant. The defendant's perception of her emotional and mental condition, the government contended, led him to believe that he could assault her without fear that the police would be called.
 
 
 10
 The district court's application of this guideline to the facts of the present case is, of course, entitled to "due deference." United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). We believe that the question of whether a victim is particularly susceptible to the criminal conduct involves factual determinations made by the sentencing judge, who has the best opportunity to observe the defendant and the victim. See United States v. Astorri, 923 F.2d 1052, 1055 (3rd Cir.1991). As the Fifth Circuit has stated, vulnerability is "the sort of fact which the trial court is peculiarly well-positioned to gauge" and is "a complex fact dependent upon a number of circumstances which a trial court could not possibly articulate completely." United States v. Mejia-Orosco, 868 F.2d 807, 809 (5th Cir.), cert. denied, 492 U.S. 924 (1989). We accordingly review the district court's determination of this matter for clear error. See, e.g., United States v. Smith, 930 F.2d 1450, 1455 (10th Cir.1991).
 
 
 11
 We have previously recognized that " '[t]he vulnerability that triggers § 3A1.1 must be an 'unusual' vulnerability which is present only in some victims of that type of crime.' " United States v. Wilson, 913 F.2d 136, 138 (4th Cir.1990) (quoting United States v. Moree, 897 F.2d 1329, 1335 (5th Cir.1990)). The defendant attacks the notion that a victim's close relationship with a defendant may lead to a finding of vulnerability for the purposes of § 3A1.1. We note that the Third Circuit in United States v. Astorri upheld a finding by a district court that "the close relationship between [the defendant] and his girlfriend" rendered the girlfriend's parents "vulnerable and 'particularly susceptible' " to a fraudulent investment scheme. 923 F.2d at 1055.
 
 
 12
 The question of a victim's vulnerability, however, is not to be settled by recourse to broad and generalized categories. Rather, an "analysis of the victim's personal or individual vulnerability" is required. United States v. Smith, 930 F.2d at 1455. On the record before us, we find no basis for concluding that the district court was clearly erroneous in its determination regarding this particular victim and the particular circumstances of this case. We defer to its finding that the defendant perceived that because of Mrs. Arch's close relationship to him, he would be able to beat her in her own home, control what she told an investigating police officer by sitting very close to her while holding an open blade knife, and escape without being reported to the authorities. The defendant's perception that his victim would not, if left to her own devices, seek to have him punished for his conduct was borne out by Mrs. Arch's testimony at trial, where she affirmed that she "didn't have any interest in going any further" with prosecuting the defendant. Acting on the basis of Mrs. Arch's unusual vulnerability to his abusive conduct, the defendant may be said to have demonstrated the "extra measure of criminal depravity which § 3A1.1 intends to more severely punish." Wilson, 913 F.2d at 138 (quoting United States v. Moree, 897 F.2d at 1335).
 
 
 13
 The defendant's last two claims of error require little discussion. Despite the defendant's argument to the contrary, we believe that the district court correctly found that the defendant's weapon was "otherwise used" and not merely "brandished." Under the commentary accompanying U.S.S.G. section 1B1.1, a weapon is brandished if it is "pointed," "waved about," or "displayed in a threatening manner." In the present case, the evidence from Officer Beck was that the defendant "came at me with the knife," took two swings at his chest, and forced the officer to step backwards to avoid being cut. He also swung his knife at Debbie Arch in a manner such that "it looked as though it struck her" from Officer Beck's vantage point. We affirm the district court's determination that this conduct went beyond the mere brandishing of the knife and that the four point increase in the base offense level under U.S.S.G. section 2A2.2(b)(2) was warranted.
 
 
 14
 Similarly, we believe that the district court correctly enhanced the defendant's sentence because one of his victims was a law enforcement officer. See U.S.S.G. § 3A1.2(a). The evidence showed that Officer Beck entered the Arch residence in pursuance of his official duty and was performing this duty by attempting to protect the safety of Mrs. Arch. In response to these actions, the defendant slashed at the officer with a knife. There is no suggestion that the defendant had any personal dispute with the officer. We therefore agree with the district court that a three level adjustment was warranted because the defendant's assault upon a law enforcement officer was motivated by the officer's official status.
 
 
 15
 Accordingly, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 1 U.S.S.G. § 3A1.1 provides:
 If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that the victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.