UNITED STATES of America, Plaintiff–Appellee,

v.

Jeana P. LEE, Defendant–Appellant.

No. 91–7042.

United States Court of Appeals, Tenth Circuit.

July 23, 1992.

---

Mark Green, Muskogee, Okl., for defendant-appellant.

John Raley, U.S. Atty., and Sheldon J. Sperling, Asst. U.S. Atty., E.D. of Okl., Muskogee, Okl., for plaintiff-appellee.

Before McKAY, Chief Judge, SEYMOUR, and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Jeana P. Lee pled guilty to a charge of embezzlement by a bank employee in violation of 18 U.S.C. § 656 (1988). She was sentenced pursuant to the United States Sentencing Commission's Guidelines Manual (hereinafter "Guidelines"). The district court enhanced her base offense level two points for engaging in more than minimal planning, Guidelines, § 2B1.1(b)(5), and two more points for targeting "vulnerable" victims, *id.*, § 3A1.1. Ms. Lee contends on appeal that each of the enhancements applied to her base offense level was improper. We affirm the district court's enhancement for more than minimal planning, but agree with Ms. Lee that the district court's victim-related enhancement was inappropri-

ate. Consequently, we remand for resentencing.[1]

At the time of the offense, Ms. Lee worked as a customer service officer at Bank First of Tahlequah, Oklahoma. In that context, she had numerous dealings with the bank's customers. The facts supporting her conviction stem from her deposit of customer funds in her own account and, on one occasion, in the account of her son. On six occasions, Ms. Lee helped different elderly female customers fill out a deposit slip and represented that she would bring the slip and funds to a teller for deposit in the customer's account. She instead deposited the funds in accounts within her control.

"We review factual findings supporting a district court's offense level calculation under the 'clearly erroneous' standard." *United States v. Smith,* 951 F.2d 1164, 1166 (10th Cir.1991). In this case, this standard of review applies to both of the arguments made by Ms. Lee on appeal.

■ The district court did not err in assigning a two level enhancement for more than minimal planning under section 2B1.1(b)(5) of the Guidelines. " 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Guidelines, § 1B1.1, Application Note 1(f). Here, the district court heard evidence that five different dates were involved, and that each occasion involved repetition of essentially the same conduct. *See* Appendix to Brief of Appellant at 17. The district court's decision to enhance Ms. Lee's offense level for more than minimal planning was not clearly erroneous.

■ The vulnerable victim enhancement requires that we address two separate issues. First, we agree with the district court's rejection of Ms. Lee's contention that *only* the bank, and not each woman, was the victim for purposes of the Guidelines. The *Application Note* to section

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.

R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

3A1.1 instructs that: "This adjustment applies to offenses where an *unusually vulnerable victim is made a target of criminal activity by the defendant.*" (emphasis added). Here, the defendant targeted each of the women, even if the bank eventually suffered the loss. In *United States v. Yount,* 960 F.2d 955 (11th Cir.1992), a trust officer of a Florida bank had misappropriated for his own use funds belonging to elderly customers. The court decided that the customers were "victims" for purposes of determining whether base offense level enhancement was appropriate under section 3A1.1. *Id.* at 958. We decide likewise in this case. For example, had Ms. Lee stolen a watch, our focus for purposes of section 3A1.1 would be on the watch's owner and not its insurer. *See United States v. Sutherland,* 955 F.2d 25, 26 (7th Cir. 1992).[2]

■ Next, we address whether Ms. Lee's victims were "vulnerable" within the meaning of the guideline. We are convinced that they were not. A review of the record demonstrates that the enhancement in this case was based solely on the victims' membership in the class of "elderly" persons. Without more, class membership cannot support a two point enhancement under section 3A1.1. *See United States v. Creech,* 913 F.2d 780, 781–82 (10th Cir. 1990) (newlywed status did not, by itself, render victims "vulnerable" for enhancement purposes); *United States v. Wilson,* 913 F.2d 136, 138 (4th Cir.1990) (district court's reliance on class membership could not support enhancement); *United States v. Mejia–Orosco,* 868 F.2d 807, 809 (5th Cir.1989) ("a judgment as to vulnerability is not reducible to a calculation of the victim's age"). The language of the guideline requires that a victim be "*unusually vulnerable* due to age,*" Guidelines, § 3A1.1, and

the cases accordingly require that the sentencing court make particularized findings of vulnerability. Specifically, there should be a nexus between the victim's vulnerability and the crime's ultimate success. "An armed robbery of a blind, elderly, or physically disabled shopkeeper would normally trigger § 3A1.1, because the additional vulnerability of handicap or age *has been exploited.*" *United States v. Moree,* 897 F.2d 1329, 1335–36 (5th Cir.1990) (emphasis added).

The record yields no indication that Ms. Lee exploited her victims' ages. There is little particularized evidence concerning vulnerability, and what little there is suggests that the district court's conclusion was inappropriate. The presentence report supports the suggested enhancement as follows: "All of the victims except the bank were elderly women." Appendix to Brief of Appellant at 6. At the sentencing hearing, the probation officer who prepared the report testified that the victims were vulnerable because, "[i]n each case the victim was elderly and had significant cash or money on deposit. And the fact that the monies were misapplied were not likely to be noticed over time." *Id.* at 18. Asked to comment about the victims as individuals the officer testified that: "It's possible that they could have managed their own affairs. I don't have any information that they were incompetent. But as I stated previously, they were all elderly and had significant monies." *Id.* at 19. Additionally, the probation officer answered "No, sir" when asked "[w]ere these victims particularly susceptible due to physical or mental condition?" *Id.* Finally, in defense of his presentence report, the probation officer emphasized the business relationship that the defendant exploited rather than the age of the victims. Appen-

---

**2.** The concurring opinion would hold that the bank, and not each depositor, was Ms. Lee's victim. Concurring opinion at 835 (McKay, C.J.). This does not strike us as an either/or proposition. The guideline demands that we focus, for enhancement purposes, on those persons targeted by Ms. Lee. *See* Guidelines, § 3A1.1. Here, Ms. Lee chose these individual depositors. The question we must address is whether they were vulnerable. A robber taking

receipts targets only the bank, and the inquiry made here would not be proper in that case. *See id.* at 835. A second robber taking the receipts and robbing only the frailest customers in the bank at the time of the crime would present a different case; one more closely analogous to ours. A judge sentencing the second robber might well· consider enhancement under section 3A1.1.

dix to Brief of Plaintiff/Appellee, Attachment 4 (Addendum to Presentence Report) at 2; *cf.* Guidelines, § 3B1.3.

■ "The label 'elderly,' like the label 'young,' is too vague, standing alone, to provide the basis for a finding of unusual victim vulnerability. The use of § 3A1.1 to enhance a defendant's punishment ... requires analysis of the victim's personal or individual vulnerability." *United States v. Smith,* 930 F.2d 1450, 1455 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991). The district court did not undertake the required analysis in this case. Unlike *Yount,* where the bank official chose account holders who "were very old, infirm, and no longer capable of managing their own financial affairs," 960 F.2d at 957, this case does not exhibit the "degree of depravity" required to justify the two point enhancement. *See Creech,* 913 F.2d at 782.

On this record, the district court's finding that the victims were "vulnerable" within the meaning of section 3A1.1 of the Guidelines was clearly erroneous. We REVERSE and REMAND for resentencing.

McKAY, Chief Judge, concurring:

I agree with the result of the majority opinion but not its reasoning with reference to who the victim is. The victim in this case is the bank and not its elderly patrons. The court appears to be suffering from a fundamental misconception about banking. A bank account is not a storage vault for a depositor's money. It is nothing more than evidence of a credit relationship between a bank and its customer. *See, e.g.,* 12 U.S.C. § 1813(1)(1). The funds are "owned" by the bank which has borrowed from its depositor. Until repaid, the funds "on deposit" belong to the bank which is a debtor of the customer. The customer does not "own" any money until the bank honors a withdrawal record of transfer request. One cannot replevin deposited funds.

The only issue here is whether we have a legal deposit when the funds were handed for purposes of deposit to the bank employee. I think as a matter of law that is so.

Michie on Banks and Banking, Ch. 9, § 20 (deposit still valid when depositor gives money to agent of bank for deposit who then converts money to own use); *First Nat'l Bank v. Dickinson,* 396 U.S. 122, 137, 90 S.Ct. 337, 345, 24 L.Ed.2d 312 (1969) (when depositor delivers funds for deposit to armored truck used by bank to transport funds to bank from off-premises location, a "deposit" has occurred). Thus, the bank is not the insurer of the funds of the customer but the owner of the funds with a credit obligation to its customer. After the ownership of the money itself transfers from depositor to bank upon deposit, it is the bank—not the depositor—who would be harmed by the conversion or embezzlement of that money. The depositor still owns the credit obligation of the bank to repay the deposit upon demand, but the bank must subtract the lost funds from the pool of resources the bank uses to invest or to repay its credit obligations to depositors when they withdraw funds from their accounts.

Absent anything further in the record, I see nothing more in this case to support the notion that the depositor is the "victim" than in a case of a bank robber taking all of the day's receipts from the tellers' drawers with proof that all of the day's deposits came from elderly people.