989 F.2d 508
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Edward BROWN, Defendant-Appellant.
 No. 92-5127.
 United States Court of Appeals, Tenth Circuit.
 March 18, 1993.
 
 Before LOGAN, HOLLOWAY and JOHN P. MOORE, Circuit Judges
 ORDER AND JUDGMENT*
 HOLLOWAY, Circuit Judge.
 
 
 1
 Defendant-appellant Mark Edward Brown ("Brown") was charged with interstate transportation of property, known to have been stolen, in violation of 18 U.S.C. § 2314. He appeals his conviction and sentence under the United States Sentencing Guidelines ("U.S.S.G."), contending that the district court improperly applied two upward adjustments to arrive at an erroneous offense level of 29 rather than 25. Brown contends that the district court should not have applied the upward adjustments for express threats of death, U.S.S.G. § 2B3.1(b)(2)(F), and for the victim's being "unusually vulnerable," U.S.S.G. § 3A1.1 (effective Nov. 1, 1990). We affirm.
 
 I. Factual and Procedural History
 
 2
 Brown participated in three residential robberies and one residential burglary between February and May of 1991; his accomplice was Brian Maurice Fuller, who Brown claims actually supervised and initiated all of the crimes. One of the robberies occurred at the home of Mary Menager, age 78, in Tulsa. As described by the probation officer, Brown and Fuller entered Menager's residence and found her in her bedroom. One of them covered her mouth with his hand and said "Don't scream or I'll kill you." See Tr. at 15. After they were finished ransacking the house, Brown and Fuller tied Menager's arms and legs together with a telephone cord. See id. The probation officer verified these facts by a telephone conversation with Ms. Menager herself, who apparently related identical versions of the story to the police immediately after the incident and to the probation officer several months later.
 
 
 3
 The other robbery at issue in this case occurred at the home of Clarence and Elizabeth Glasgow. In that incident, the victims reported both to the police and to the probation officer that both Brown and Fuller were present when the Glasgows were placed in two separate chairs and tied up before Brown and Fuller departed. See Tr. at 13-14.
 
 
 4
 With respect to these crimes, Brown claims that he was not in the house at the time that Menager was threatened or tied up, or in the Glasgow home when the Glasgows were tied up. See Tr. at 17-23. He claims to have been outside during both incidents, although he admits participation in both crimes. He also admitted committing perjury on prior occasions before a grand jury. See Tr. at 23, 27.
 
 
 5
 Brown was indicted for the interstate transportation offense on March 6, 1992 and pled guilty pursuant to a plea agreement on April 10, 1992. The Presentence Report ("PSR") was served on Brown and his attorney on May 21, 1992, and they entered their objections on June 4, 1992. Brown's sentencing hearing occurred on June 12, 1992; both Brown and the probation officer testified. The probation officer testified that he confirmed the details of the crimes by contact with the victims, and that each victim confirmed in detail what they had said to police officers months earlier. The probation officer said that he called Ms. Menager; she said that both suspects rushed in and one placed his hand over her mouth and made the statement: "Don't scream or I'll kill you." Brown admitted being present when the two offenses (the Menager and Glasgow robberies) occurred. See Tr. at 13-16. Brown testified that he was outside of the houses when Fuller restrained the victims and when he threatened Ms. Menager, and that he in fact had tried to make the victims more comfortable, for example getting Ms. Menager a pillow. See, e.g., Tr. at 22.
 
 
 6
 The district court found that the probation report was accurate and credited the testimony of the probation officer that Brown had in fact been present when the threat against Menager was made, when she was tied up, and when the Glasgows were tied up. See Tr. at 29. Therefore, the district court found that the total offense level was 29, with a criminal history category of III, and sentenced Brown to a term of 120 months, a special assessment of $50.00, and required restitution. See Tr. at 32, 34. Judgment was entered on June 17, 1992 and Brown filed his timely notice of appeal on June 22, 1992.
 
 
 7
 Our review of Sentencing Guidelines cases is governed by two standards. We review the district court's applications of the Guidelines to the facts under a due deference standard, while we review questions of law de novo. See United States v. Shewmaker, 936 F.2d 1124, 1126 (10th Cir.1991). We uphold the district court's factual determinations unless they are clearly erroneous. See id.
 
 II. Adjustments for Express Threat of Death
 
 8
 The district court specifically found that Brown was an aider and abettor in Fuller's conduct, including the death threat made to Ms. Menager. See Tr. at 30. The court thus applied U.S.S.G. § 2B3.1(b)(2)(F) and increased Brown's base offense level by two points. See Tr. at 32. Brown contends that there was insufficient evidence to establish that he was present at the time the threat was made and that it was foreseeable to him that the threat would be made; he specifically denied being present at that time. He claims that the hearsay evidence relied upon by the court (the probation officer's testimony about what the victims told him) "lacks minimal indications of reliability," and states that specific testimony regarding exactly what transpired during the crimes "would be far more persuasive." See Appellant's Principal Brief at 8.
 
 
 9
 The first thing to note is that the standard of proof with respect to sentencing factors is less stringent than that required to establish guilt--all that is required is that the government show applicability of an adjustment by a preponderance of the evidence. See United States v. Beaulieu, 893 F.2d 1177, 1181 n. 7 (10th Cir.1990). We are satisfied that under this standard the findings of the district judge were not clearly erroneous. See id. at 1182. Second, the district court is permitted to consider reliable hearsay for sentencing purposes, see id. at 1180-81, while due process requires that the information have some minimum indicia of reliability beyond mere allegations. See Shewmaker, 936 F.2d at 1129.
 
 
 10
 The testimony in this case met these requirements, and we find no error in the district court's implicit finding that Brown did not successfully rebut the out of court statements of the victims. The district court could have found the hearsay testimony reliable because the victim's statements[1] were internally consistent over time (in fact, the probation officer stated that the statements given immediately after the crimes were identical in all details to those given to him for the preparation of the PSR), because the victims' stories were consistent between the two crimes (the victims claimed that Brown was present at all times, and neither had reason to fabricate their stories[2]), and the court could have doubted Brown because he was an admitted perjurer. In short, nothing in the record suggests that the district court erred in crediting the statements of the victims to the probation officer and discrediting Brown's attempts to exculpate himself from the conduct relied on for the adjustment.
 
 
 11
 Moreover, the district court did not err in determining that U.S.S.G. § 2B3.1(b)(2)(F) was applicable to the conduct at issue here. First, the threat made to Ms. Menager was precisely the type of statement the adjustment was intended to punish. See U.S.S.G. § 2B3.1, comment. (n. 7); United States v. Strandberg, 952 F.2d 1149, 1151-52 (9th Cir.1991). Second, Brown may be held responsible for the threat in any event, whether made by Brown himself or, as he says, by Fuller. See U.S.S.G. § 1B1.3(a)(1).[3]
 
 
 12
 In sum, the adjustment for threat of death is sustained by the record and the Guidelines.
 
 III. Adjustment for Victim Vulnerability
 
 13
 The district court also specifically found that "because of [Ms. Menager's] physical condition and her age, she was vulnerable" and thus imposed the two-point adjustment required by U.S.S.G. § 3A1.1. See Tr. at 32. The PSR stated that Fuller and Brown chose victims who were "vulnerable due to age, gender, or physical condition." See Appellant's Principal Brief at 11. Brown argues that the district court was required to enter an explicit finding that the victim was "unusually" vulnerable in order to support the § 3A1.1 adjustment.[4] He claims that the court had to consider Ms. Menager's specific condition, rather than the conditions of elderly women in general, in order to find § 3A1.1 applicable.
 
 
 14
 In support of the court's finding, the prosecution notes that Brown stipulated that "the Defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condiction, or that a victim was otherwise particularly susceptible to the criminal conduct." See Appellant's Principal Brief at 11; I R.Supp. at 2 (Brown's plea agreement); I R.Supp.Tr. at 14 (Brown's guilty plea hearing). The Guidelines sanction the use of such stipulations in sentencing calculations. See U.S.S.G. § 1B1.2(a), (c); U.S.S.G. § 1B1.2, comment. (n. 3) (noting that it is appropriate for a court to consider stipulations of facts not elements of the offense defendant was convicted of in deciding whether adjustments are applicable).
 
 
 15
 We have held that the § 3A1.1 adjustment requires an analysis of the personal or individual vulnerability of the actual crime victim, not the class to which he or she belongs. See United States v. Smith, 930 F.2d 1450, 1455 (10th Cir.1991); accord United States v. Morrill, No. 91-8386, 1993 U.S.App. LEXIS 2350 (11th Cir. February 16, 1993) (per curiam ) (en banc ) (holding that while bank tellers in individual cases may be particularly susceptible or otherwise vulnerable victims of bank robbery, bank tellers as a class are not vulnerable victims under section 3A1.1). That analysis should include such things as the age and physical condition of the victim, the victim's mental condition, the defendant's motivation in selecting the victim, and the way in which the crime was committed (such as through trickery rather than force). See id. As we noted in United States v. Creech, 913 F.2d 780, 782 (10th Cir.1990), the defendant covered by § 3A1.1 is one who selects victims who are more vulnerable to the crime perpetrated upon them than most victims would be. See also United States v. Lee, 973 F.2d 832, 834-35 (10th Cir.1992).
 
 
 16
 In this case we think that the district court's findings were not clearly erroneous and meet the requirements of § 3A1.1. Brown stipulated in the terms of the adjustment under § 3A1.1, as quoted above.[5] The crime was committed against Ms. Menager by two men. The judge found specifically that "the more serious robbery of the group was that of Ms. Mary Menager who was age 78 ... [m]ore serious because there was a death threat there set forth in paragraph 29 and she was physically restrained by being tied up with a cord and placed on the bed ... and because of her physical condition and her age, she was vulnerable." No issue was raised below challenging the applicability of the § 3A1.1 adjustment other than Brown's testimony at the sentencing hearing that Brown was standing outside, just "watching" for Fuller. Tr. 18. Therefore, despite the lack of an express finding that the victim was "unusually vulnerable," see Smith, 930 F.2d at 1455, we find no error in the adjustment in these circumstances.
 
 IV. Conclusion
 
 17
 For the foregoing reasons, we hold that the district court properly applied the adjustments required by U.S.S.G. §§ 2B3.1(b)(2)(F) and 3A1.1 to Brown in this case. The sentence is therefore AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We note, although the issue was only raised by Brown implicitly, that Brown had no absolute Sixth Amendment right to confront the witnesses and cross-examine them. See Beaulieu, 893 F.2d at 1180-81
 
 
 [2]
 Accord United States v. Zuleta-Alvarez, 922 F.2d 33, 37 (1st Cir.1990) (corroboration by other witnesses is one indicator of reliability)
 
 
 [3]
 The text of this guideline did not change between the time of the commission of the crime and the time of sentencing. During both periods, § 1B1.3(a)(1) stated that adjustments should be determined by
 all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction ... or that otherwise were in furtherance of that offense.
 The application notes to § 1B1.3 tell us that
 [i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.
 U.S.S.G. § 1B1.3, comment. (n. 1) (effective November 1, 1990).
 
 
 [4]
 The adjustment applies if "the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition." (Emphasis added)
 
 
 [5]
 See U.S.S.G. § 6B1.4(a)(1) and comment. (Backg'd). Under these provisions a plea agreement may be accompanied by a written stipulation of facts relative to sentencing. Such stipulations shall set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics. As the comment notes: "Even though stipulations are expected to be accurate and complete, the court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information." We feel that the district court complied with the requirements in light of the stipulation and the other circumstances