35 F.3d 557
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Josh SMALL, a/k/a Chicken Small, a/k/a Chicken, Defendant-Appellant.
 No. 93-5427.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 14, 1994.
Decided Sept. 14, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield. David A. Faber, District Judge. (CR-92-128, CR-93-27)
 Steven L. Miller, Miller & Reed, L.C., Cross Lanes, W.Va., for appellant.
 Charles T. Miller, U.S. Atty., S. Benjamin Bryant, Asst. U.S. Atty., Huntington, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before NIEMEYER and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 After he was charged in a one-count indictment with making threats against a federal witness in violation of 18 U.S.C. Sec. 1513(a)(2) (1988), Josh Small entered a not guilty plea and went to trial. On the third day of trial, Small changed his plea to guilty. Pursuant to a plea agreement, he later entered a separate guilty plea to an information charging one count of racketeering, 18 U.S.C. Sec. 1962 (1988), and one count of tax evasion, 18 U.S.C.A. Sec. 7201 (West 1989). Small was sentenced on all three counts at once. A term of eighty-seven months was imposed on Count One of the information (the racketeering charge), a sentence of sixty months, the statutory maximum, was imposed on Count Two of the information (the tax evasion charge), and a sentence of sixty months was imposed on the single-count indictment (the threats charge). Small appeals his sentence. We affirm the sentence imposed, but remand for correction of the judgment and commitment order.
 
 
 2
 Small owned an asphalt paving operation. His racketeering offense arose out of "flim-flam" paving he did in West Virginia, Virginia, Ohio, and Kentucky. Working with a crew of three or four men, and sometimes with other paving contractors, Small travelled about looking for customers who could be convinced to have their driveway paved for a bargain price. Small and his associates would do quick and shoddy work for those who accepted their offer, demand immediate payment, in cash if possible and often for a higher price than expected, and leave town at the end of the day. Small reported no income in 1988 although he used cash to buy a $35,000 dump truck and jewelry worth $5000, and to make a $9000 cash down payment on a Corvette. After complaints from victims brought about an investigation into such fraudulent activities, Small called Joe Panagopoulos, whom he rightly suspected of being an informant, and threatened to kill Panagopoulos. The call was recorded. In another recorded call, Small expressed a preference for elderly victims because if he got into trouble over a bad paving job the victim might die before the case ever came to trial. Investigators who interviewed about a dozen of Small's victims found that their average age was over sixty and several had serious handicaps.
 
 
 3
 When interviewed by the probation officer following his guilty plea to the threats charge, Small denied most of the deceptive practices attributed to him by the government and denied targeting elderly victims. However, he later admitted to a polygraph examiner that he had targeted elderly and handicapped victims for a time.
 
 
 4
 At his sentencing hearing, Small argued that he qualified for a three-level adjustment for acceptance of responsibility under guideline section 3E1.1(b),[1] and contested the probation officer's recommendation that he receive enhancements under section 3A1.1 for targeting vulnerable victims, under section 3B1.1 for being a leader or organizer in the offense, and under section 3C1.1 for obstructing justice by making threats to Panagopoulos.
 
 
 5
 To meet its burden of proof concerning Small's leadership role and the enhancement for vulnerable victims, the government offered the testimony of two men who had worked with Small. Ben Brooks worked as a laborer for Small for two or three years prior to 1991. He testified that Small usually had a crew of about three workers besides himself, and that Small was the boss of everyone who worked with him. Robert Mathena owned a dump truck and worked as a partner with Small, splitting the profits, for about six weeks in 1990. He said that from two to ten people worked with Small at different times, that no one told Small what to do, and that Small decided where they would work.
 
 
 6
 Mathena testified that Small looked for old people who were "really stupid" because it was easier to convince them that they would be getting the work done cheaply, and "then you could really put the price up on them." He described a number of elderly persons with handicaps who were defrauded by Small. One was an "old, old" man who had difficulty walking; he was unable to inspect Small's paving work after it was done. Another was a man who was pretty much senile, and quite unable to understand that the price quoted him was for square feet, not square yards--one of the standard tricks of the scam. He also described a lady who was first seen walking in her yard with the aid of a stick; she had undergone cataract surgery and had to use a lighted magnifying glass to write her check. When Mathena pointed her out, Small commented that there was a job for them. An agent for the Internal Revenue Service who had interviewed people defrauded by Small verified Mathena's testimony about these specific victims.
 
 
 7
 Two witnesses testified on Small's behalf. Both were relatives who had worked with him. They testified that Small worked with a crew of no more than three people including himself, that he worked with his crew and was not a boss, that elderly people were not specifically targeted, and that Small did good work.
 
 
 8
 After an extended sentencing hearing and a second hearing for additional evidence on the vulnerable victim question, the district court found that the section 3A1.1 enhancement was properly given because the government showed by a preponderance of the evidence that on certain specific occasions Small selected a victim whose physical limitations made the person an easier target of his scam. Small contends that the evidence did not show that he specifically targeted unusually vulnerable people, and also that the victims mentioned by the district court were not unusually vulnerable, only elderly.
 
 
 9
 The guideline plainly requires an unusual degree of vulnerability in the victim. United States v. Smith, 930 F.2d 1450, 1455 (10th Cir.), cert. denied, 60 U.S.L.W. 3263 (U.S.1991); United States v. Wilson, 913 F.2d 136, 138 (4th Cir.1990). Moreover, Application Note 1 precludes application of the adjustment for an offense which targets the general public and happens to include some unusually vulnerable victims. The victim must be targeted because of a particular vulnerability known to the defendant. United States v. Gary, 18 F.3d 1123, 1128 (4th Cir.1994). That a victim is simply elderly does not make him an unusually vulnerable victim. See United States v. Lee, 973 F.2d 832, 834 (10th Cir.1992); United States v. Yount, 960 F.2d 955, 957 (11th Cir.1992).
 
 
 10
 Our review of the record discloses that the district court was not clearly erroneous in finding that Small targeted especially vulnerable victims, even though he also defrauded people who were not in this category. The court found that Small victimized several elderly people who had physical limitations apart from their age which made them unusually vulnerable to Small's scam.[2] The evidence reveals that Small preferred and sought out such victims. Therefore, the adjustment was properly applied.
 
 
 11
 The district court gave Small a four-level enhancement for having a leadership role in the offense. U.S.S.G. Sec. 3B1.1(a). This too was a factual finding which was not clearly erroneous. First, the criminal activity involved more than five participants. The court identified Small, Mathena, Brooks, an unnamed participant who was about to enter a guilty plea, and a number of Small's relatives as "culpable" participants. Second, Small, as an employer of the laborers who helped him do the paving, was clearly a leader and organizer in the fraudulent activity. Although there were other paving contractors besides Small who were involved, there may be more than one person who qualifies as a leader in an offense. U.S.S.G.Sec. 3B1.1, comment. (n.3). A finding that Small supervised five participants was unnecessary, and the court was not required to identify all five participants by name.
 
 
 12
 In spite of his guilty plea to threatening Panagopoulos because Panagopoulos gave information to federal authorities, Small contended during his sentencing that he had threatened Panagopoulos because of a rivalry over their mutual acquaintance, Lisa Miles. We find that an enhancement for obstruction of justice was correctly given by the district court. Small's guilty plea established the fact that he threatened Panagopoulos for being a federal witness, and the plea was supported by his recorded threats to Panagopoulos for the same reason. The offense is covered by guideline section 2J1.2 (Obstruction of Justice). Small was also convicted of the underlying offenses of racketeering and tax evasion. All three offenses were grouped and the racketeering offense yielded the greater offense level. In this circumstance, an enhancement for obstruction of justice was required. U.S.S.G. Sec. 3C1.1, comment. (n.6).
 
 
 13
 Finally, Small was given a two-level reduction for acceptance of responsibility with the government's concurrence. U.S.S.G. Sec. 3E1.1(a). However, the district court denied him a three-level reduction under section 3E1.1(b) because he had entered his first guilty plea only after several days of trial. Small maintains that he earned a three-level reduction by providing complete information to the government about his involvement in the subsequently charged offenses and saving the government the effort of a trial on those counts.
 
 
 14
 We find no clear error in the court's determination. Timeliness is an important consideration in the decision to award an additional decrease under both subsections of section 3E1.1(b). Small entered his first guilty plea in the middle of trial and his second plea a month later, albeit as soon as the criminal information was filed. The commentary to section 3E1.1 states that conduct which will qualify a defendant for the extra decrease generally will occur particularly early in the case. U.S.S.G. Sec. 3E1.1, comment. (n.6). Small's cooperation and his guilty pleas came late rather than early in the case. Moreover, even after his guilty plea to the witness-threatening charge, he continued to assert that he had threatened Panagopoulos over Lisa Miles.
 
 
 15
 Accordingly, we affirm the district court's rulings on all contested issues. We note, however, that the court imposed a sixty-month sentence, less than the total punishment of eighty-seven months, on the conviction for making threats to a federal witness (single-count indictment), even though the statutory maximum for that offense is 120 months. 18 U.S.C. Sec. 1513(a)(1988). When sentence is imposed on multiple counts, the sentence imposed on each count shall be the total punishment, i.e., the sentence selected from the guideline range, unless a different sentence is required by statute. See U.S.S.G. Sec. 5G1.2(b) & commentary. Because the sentence imposed for the Sec. 1513(a) conviction clearly does not comply with the guideline, we find that plain error occurred. United States v. Olano, 61 U.S.L.W. 4421 (U.S.1993).
 
 
 16
 We therefore vacate the sentence and remand for correction of the judgment and commitment order. We deny Small's motion for oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 17
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov.1992)
 
 
 [2]
 Although the district court described the victims as vulnerable rather than unusually vulnerable, its discussion focused on individual traits which rendered these victims more vulnerable than the average elderly person