**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David D. BRUNSON, Defendant– Appellant.**

No. 94–6065.

United States Court of Appeals, Tenth Circuit.

May 11, 1995.

Howard R. Haralson, Oklahoma City, OK, for defendant-appellant.

Mary M. Smith, Asst. U.S. Atty. (Vicki Miles–LaGrange, U.S. Atty., and James F. Robinson, Asst. U.S. Atty., with her on the brief), Oklahoma City, OK, for plaintiff-appellee.

Before HENRY and McKAY, Circuit Judges, and SAFFELS,* District Judge.

McKAY, Circuit Judge.

The defendant, Mr. Brunson, was convicted of numerous counts of wire fraud, laundering of monetary instruments, and engaging in monetary transactions in property derived from specified unlawful activity in conjunction with a scheme to defraud the Russian Coal Company out of several million dollars. 18 U.S.C. §§ 1343, 1956(a)(1)(A)(i), and 1957. He was forced to forfeit the monies, properties, and proceeds traceable to

the illegally acquired funds pursuant to 18 U.S.C. § 982(a)(1).

Mr. Brunson has raised five issues on appeal. The first issue pertains to the defendant's competency to stand trial. Three of the issues concern the district court's application of the Sentencing Guidelines. Finally, Mr. Brunson challenges the district court's order that he pay restitution. We affirm in part, reverse in part, and remand.

Mr. Brunson devised a scheme to defraud the Russian Coal Corporation of over four million dollars. Of this sum, he received over one million dollars. To obtain these funds, Mr. Brunson promised to build an automated brick plant in Russia. A contract to this effect was signed in July 1992 in Del City, Oklahoma, by Mr. Brunson (as President of Consolidated Services Corporation) and by a representative of the Russian Coal Corporation. The total contract price was $4.395 million. An expert testified that a brick-making plant of the type specified in the contract could not have been built for less than $10 million.

On September 14, 1992, $1,318,480.00 was transferred by wire into Mr. Brunson's personal bank account. Shortly thereafter, Mr. Brunson began to dissipate these funds for personal use, including the purchase of seventeen luxury and classic automobiles, the purchase of one residence, the rental of another residence, vacation trips, computer software and hardware, college tuition for his son, jewelry, furniture, home improvements, etc. Needless to say, these expenditures were unrelated to the construction of a brick factory in Russia. Mr. Brunson did utilize some of the funds to lease a warehouse and to purchase a few items of brick-making equipment. It appears, however, that these acts were done solely in furtherance of the fraud, that is, to create the impression that CSC was a viable business capable of fulfilling the contract. In fact, the only items ever sent to Russia were approximately $1,000 worth of anchor bolts. By June 1993, when the original indictment against Mr. Brunson was filed, only about $176,000 remained in

---

* Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation.

the defendant's account. Mr. Brunson's trial was held in November 1993, and he was convicted on all fifty-one counts.

On appeal, Mr. Brunson contends that the district court erred by failing to consider his competency during the time of trial. Mr. Brunson did not raise the issue of his competency to stand trial until January 1994, after the trial but prior to sentencing. Although the court did not believe there was any basis to believe that he was incompetent, out of an "abundance of caution" he ordered a psychological examination and granted a hearing on the issue. The district judge found Mr. Brunson to be competent based on his own observations and the testimony both of the examining physician and Mr. Brunson's trial counsel. Mr. Brunson has offered no credible basis for disturbing this finding on appeal.

Mr. Brunson has claimed that three errors were made in applying the Sentencing Guidelines. His first claim is that the district court erred in its application of the grouping provisions. Specifically, Mr. Brunson claims that his multiple counts of conviction should be grouped under U.S.S.G. § 3D1.2(b) rather than § 3D1.2(d). A determination of whether counts are appropriately grouped under the Guidelines is an issue of law which we review *de novo*. *United States v. Smith*, 13 F.3d 1421, 1428 (10th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 209, 130 L.Ed.2d 138 (1994). Mr. Brunson's claim is without merit. We find no error in the manner in which the sentencing court applied the grouping provisions.

Mr. Brunson also disputes the application of two victim-related adjustments to his sentence. We find these arguments to be meritorious. Mr. Brunson received a two-point sentence enhancement under U.S.S.G. § 3A1.1, which provides for an enhancement "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." We uphold such findings of the district court unless they are clearly erroneous. *United States v. Lee*, 973 F.2d 832, 833

(10th Cir.1992). However, never before have we held that a company engaged in an arms-length business transaction could be classified as a "vulnerable victim," and we decline to do so here.

In order to classify a victim as "vulnerable," "the sentencing court must make particularized findings of vulnerability." *Id.* at 834. The focus of the inquiry must be on the "victim's personal or individual vulnerability." *Id.* at 835; *see also United States v. Creech*, 913 F.2d 780, 781–82 (10th Cir.1990). For example, a frail, older woman recently weakened by a double mastectomy who was targeted for a sexual assault was an unusually vulnerable victim. *United States v. Pearce*, 967 F.2d 434, 435 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 341, 121 L.Ed.2d 257 (1992). Most recently, we upheld an enhancement under § 3A1.1 based on a finding that the victims were elderly, unsophisticated retirees who were fraudulently induced to invest their retirement funds in a phony investment scam. *United States v. Lowder*, 5 F.3d 467, 472 (10th Cir. 1993).

As these cases indicate, "vulnerable victims" are those who are in need of greater societal protection. It is doubtful that a state-owned business entity would ever qualify as a vulnerable victim; this is certainly true of a corporation engaged in multi-million dollar international transactions. Although it is true that the Russian Coal Company employed as its agent an elderly gentleman who appeared to be unsophisticated and inexperienced in the international business arena, it was the company, not the agent, that was the victim of the crime. Section 3A1.1 is not intended to protect businesses from their own incompetence by providing an enhancement above and beyond the normal criminal sanctions.

The district court seemed to suggest that the mere fact that the Russian Coal Company engaged in the transaction proved that they were a vulnerable victim. "[O]ne can conclude that the very fact that they entered into negotiations and, indeed, concluded a contract with this defendant, under the circumstances, is evidence of naivete and

inexperience and lack of sophistication." (Trial transcript at 1322–23). The fact that they were victimized is insufficient, by itself, to show that they were especially vulnerable. More specifically, the court held that the Russian Coal Company was vulnerable "because of the language barrier as well as inexperience with a free market economy." (Presentence report at 4). As we have stated previously, the "victim's vulnerability made the attempted crime possible, but ... did not make [the victim] an unusually vulnerable victim." *Creech,* 913 F.2d at 782 (*quoting, United States v. Moree,* 897 F.2d 1329, 1336 (5th Cir.1990)). We may take judicial notice that foreign companies, even those from formerly socialist economies, conclude contracts with American companies all the time. These two factors are insufficient to support a finding of special vulnerability. The district court also placed great weight on the fact that Mr. Brunson apparently singled out foreign companies because they could be more easily duped. While it is true that the defendant targeted the Russian Coal Company for his fraudulent scheme because he thought that they might fall for it, the same could be said of virtually all schemes to defraud.

> It is logical to assume the intended victim of any premeditated offense will be selected because something in his or her persona or circumstances will make successful the intended criminal act. We must therefore assume the Commission adopted § 3A1.1 to enhance a defendant's punishment for an act of depravity.

*Creech,* 913 F.2d at 782. In *Creech,* we held that singling out newlywed husbands for extortionate threats directed at their wives did not warrant a § 3A1.1 enhancement. We cannot say that focusing on foreign companies as potential victims is more depraved than that.

 Mr. Brunson also challenges the application of a two-point sentence enhancement under U.S.S.G. § 3B1.3. This section provides for an increase for defendants who abuse a position of trust that they occupy in relation to the victim. We find the application of this section to Mr. Brunson to be clearly erroneous because Mr. Brunson did not occupy a position of trust vis-a-vis the Russian Coal Company in this transaction.

In the typical case where § 3B1.3 applies, the victim is a business and the defendant is an employee who has taken advantage of the knowledge and responsibilities acquired by virtue of his or her position within the company to embezzle or otherwise steal from the company. Their "position of trust must have contributed in some significant way to facilitating the commission or concealment of the defense (*e.g.,* by making the detection of the offense or the defendant's responsibility for the offense more difficult.)" U.S.S.G. § 3B1.3 cmt. 1; *see, e.g., United States v. Johnson,* 4 F.3d 904 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1082, 127 L.Ed.2d 398 (1994) (bank vault teller conspired with others to rob bank vault using knowledge of security procedures to avoid detection); *United States v. Fox,* 999 F.2d 483 (10th Cir.1993) (credit card company employee issued card to herself under another person's account, made charges, then covered up delinquency on computer); *United States v. Levy,* 992 F.2d 1081 (10th Cir.1993) (president of bankrupt company embezzled funds, defrauding trustee and creditors); *United States v. Chimal,* 976 F.2d 608 (10th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993) (embezzlement by company controller); *United States v. Williams,* 966 F.2d 555 (10th Cir.1992) (embezzlement by military pay accountant). Clearly, this case does not fall into this category.

As the application note to § 3B1.3 indicates, the other type of case where an enhancement under § 3B1.3 is proper is where a fiduciary or personal trust relationship exists. For example, in *United States v. Queen,* 4 F.3d 925 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1230, 127 L.Ed.2d 575 (1994), we upheld an enhancement for the president of a company who had claimed to be an investment advisor/broker and had solicited funds which he had diverted for his personal use. He covered up his diversion by sending phony profit statements to the investors. Clearly, his position provided him with "the freedom to commit a difficult-to-detect wrong," one of the essential

factors in the test for abuse of trust. *United States v. Williams*, 966 F.2d at 557. Furthermore, the district court had specifically found that a fiduciary relationship existed between the defendant and his "clients." *Id.* at 927. Similarly, in *United States v. Lowder*, 5 F.3d 467 (10th Cir.1993), an accountant personally solicited investments from his tax clients, fraudulently promising them a guaranteed twelve percent return; the funds he then diverted to his personal use. As president of the company, he was able to dispose of the investors' money without oversight. These cases are closer to the case at bar in that they involve presidents of companies who defrauded others. Despite this similarity, these cases do not support an "abuse of trust" enhancement for Mr. Brunson.

Unlike a personal investment advisor/investor relationship, in an ostensibly normal arms-length commercial relationship such as this one, no trust relationship exists between the two principals. The guideline enhancement requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary function is required. Despite the government's assertions to the contrary, Mr. Brunson's position did not provide him with the "freedom to commit difficult-to-detect wrongs." This was a contract for the construction of a brick plant, not a paper or electronic transaction. Even relatively unsophisticated businessmen like the Russian Coal Company would undoubtedly detect that no brick plant was built. Although it is assuredly true that the Russian Coal Company had confidence in Mr. Brunson, and it is equally true that he abused that confidence, the same could be said of virtually any successful fraud. The fact that this is an enhancement provision by definition means that it is not intended to be applied in every case of fraud. It was clearly erroneous to apply this enhancement to Mr. Brunson.

Mr. Brunson's final contention on appeal is that the district court erred in directing him to pay restitution since there has been no showing that he has the ability to pay restitution. A district's court order of restitution is reviewed under the clearly erroneous standard. *United States v. Mitchell,*

15 F.3d 953, 958 (10th Cir.1994). The district court ordered the defendant to pay restitution in the amount of $1,333,887.04, (the amount of the Russian Coal Company's loss) less any credits derived from the sale of the forfeited assets. The government concedes that the record regarding the defendant's ability to pay, his assets, and his future earning potential are unclear. Without knowing the actual amount of restitution the defendant would be required to pay, we are unable, with the limited record before us, to determine the propriety rectitude of the restitutionary order. Accordingly, upon the government's suggestion, we are remanding this matter to the district court for further findings.

AFFIRMED in part, REVERSED in part, and REMANDED for resentencing and other proceedings not inconsistent with this opinion.