UNITED STATES of America,
Plaintiff–Appellee,

v.

Doyle KOEHN, Defendant–Appellant.

No. 94–1553.

United States Court of Appeals,
Tenth Circuit.

Jan. 19, 1996.

Rehearing Denied April 1, 1996.

Charles Szekely, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colorado, for Defendant–Appellant.

James C. Murphy, Assistant United States Attorney (Henry L. Solano, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff–Appellee.

Before BRISCOE, SETH, and LUCERO, Circuit Judges.

LUCERO, Circuit Judge.

Appellant Doyle Koehn entered guilty pleas in the United States District Court for the District of Colorado to one count of wire fraud, 18 U.S.C. § 1343, and one count of making a false statement to the Department of Housing and Urban Development, 18 U.S.C. § 1010. The district court calculated Appellant's sentence under the United States Sentencing Guidelines. The adjusted offense level of eighteen included a two level enhancement for abuse of a position of trust. USSG § 3B1.3. The sole issue on appeal is whether the district court was warranted in applying the abuse of a position of trust enhancement. We affirm.

## BACKGROUND

In July, 1991, Appellant was the president of Executive Mortgage, Inc. ("Executive Mortgage"), a Colorado business engaged in originating and refinancing residential mortgages and selling them on the secondary market. Appellant also controlled Real Estate Escrow and Closing Services, Inc. ("Escrow Closing Services"). Appellant used Escrow Closing Services to close mortgages originated by Executive Mortgage. Both companies shared the same office space.

In a typical transaction, Executive Mortgage would originate and sell a secured residential loan to a mortgage servicing company. Once the mortgage servicing company decided to buy the mortgage loan from Executive Mortgage, it would deliver funds to Escrow Closing Services. These funds were intended to be held in escrow and disbursed to pay off existing mortgages. When the existing mortgages were satisfied, new notes and related papers were forwarded to the buyer.

On or about July 8, 1991, Appellant telephoned a mortgage trader employed by U.S. Mortgage Servicing Corporation, located in St. Petersburg, Florida, and offered to sell thirteen FHA and VA insured residential mortgage loans. The next day Appellant had preliminary paperwork on the mortgages delivered to U.S. Mortgage so it could inspect the loan packages Appellant proposed to sell. Between July 9 and July 12, 1991, U.S. Mortgage agreed to purchase all thirteen loan packages. On July 12, pursuant to Appellant's instructions, U.S. Mortgage wired $882,550.76 to Escrow Closing Services' account at the First National Bank of Southeast Denver. The purpose of wiring the funds was to pay off the existing mortgages on the thirteen loans U.S. Mortgage had agreed to buy.

That same day, Appellant misappropriated about $725,000 of these funds for the purpose of satisfying unrelated and independent obligations of Executive Mortgage. Several days later, Tina Sokol, an employee of U.S. Mortgage, called Appellant, inquiring why the loan packages had not been sent. Appellant informed Ms. Sokol that the loans were not due until later that month but that they would be sent in the near future. By July 22, Appellant had misappropriated the remaining funds wired to Escrow Closing Services by U.S. Mortgage. Appellant never delivered the thirteen loan packages to U.S. Mortgage. In fact, he sold the same loan packages to another mortgage servicing company. As a result of Appellant's fraud, U.S. Mortgage was driven out of business.

After Appellant's fraud was discovered, he was charged with and pled guilty to violating 18 U.S.C. § 1343, wire fraud. In the government's Information, filed August 19, 1994, it is clear that the predicate wire fraud act occurred when "Koehn transmitted and caused to be transmitted by means of wire communication in interstate commerce . . . a wire transfer of funds . . . from U.S. Mortgage Servicing Corporation in St. Peters-

burg, Florida, to the account of Real Estate Escrow and Closing Service, Inc., at First National Bank of Southeast Denver." The district court calculated a twenty-seven month sentence under the Guidelines, based on an adjusted offense level of eighteen. The sentence was the lowest permitted within the guideline range. The offense level determination included a two level enhancement under USSG 3B1.3, for abuse of a position of trust. Without the enhancement, Appellant would have been eligible to a sentence reduction of up to five months. At the sentencing hearing, Appellant objected to the two level enhancement, claiming that he did not occupy a position of trust. On appeal, he renews his objection.

## DISCUSSION

■ The Appellant argues that the district court improperly enhanced his sentence because he did not occupy a position of trust with respect to U.S. Mortgage. According to Appellant, a position of trust was never created because he and his customer were sophisticated merchants involved in an arms-length commercial transaction. The district court determined that Appellant's control over the escrow accounts facilitated his crime in a way that could not have been done by others, and increased the sentence accordingly. Whether a defendant occupied a position of trust within the meaning of USSG § 3B1.3 is a factual question, and we will affirm the sentencing court unless we find its decision clearly erroneous. *United States v. Queen,* 4 F.3d 925, 928 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1230, 127 L.Ed.2d 575 (1994).

Guidelines section 3B1.3 states: "If the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels." Persons who abuse a position of trust to facilitate committing an offense are generally considered more culpable. USSG § 3B1.3, Background Note. " 'Public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion." USSG § 3B1.3, Application note 1. Examples of behavior satisfying the en-

hancement include embezzlement of a client's funds by an attorney acting as a guardian, and a bank executive's fraudulent loan scheme. *Id.* "For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense." *Id.*

■ In the fraud context, we have applied § 3B1.3 in two types of cases. The first is where the defendant steals from his employer, using his position in the company to facilitate the offense. *See, e.g., United States v. Levy,* 992 F.2d 1081 (10th Cir.1993) (official of bankrupt company embezzled from company, defrauding trustee and company's creditors); *United States v. Chimal,* 976 F.2d 608 (10th Cir.1992) (embezzlement by company comptroller), *cert. denied,* 507 U.S. 938, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993). The second is where a "fiduciary or personal trust relationship exists" with other entities, and the defendant takes advantage of the relationship to perpetrate or conceal the offense. *United States v. Brunson,* 54 F.3d 673, 677 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 397, 133 L.Ed.2d 317 (1995). This case clearly belongs in the second category.

■ The primary concern of § 3B1.3 is to penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong. *Queen,* 4 F.3d at 929–30. In every successful fraud the defendant will have created confidence and trust in the victim, but the sentencing enhancement is not intended to apply in every case of fraud. *Brunson,* 54 F.3d at 678. In analyzing whether § 3B1.3 applies in a "fiduciary or personal trust" situation, we must carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity, and relationships in which the victim's trust is based on defendant's position in the transaction. Only in the latter does defendant's position enable him to commit or conceal the fraud, or significantly facilitate the offense. It follows that not every misuse of a fiduciary relationship will subject a defendant to the enhancement; he must either occupy a "formal position of

trust" or create sufficient indicia that he holds such a position that it is appropriate to hold him so accountable. *Queen,* 4 F.3d at 929 n. 3.

In *Queen,* for example, the defendant was the president of an investment brokerage firm specializing in precious metals. The firm, at defendant's instruction, solicited investments that defendant then diverted to his personal use. Defendant continued to conceal the crime by directing the firm to send out phony profit statements to investors. The court found that the company, by setting itself out as an advisor/broker to its victims, allowed the defendant to occupy a formal position of trust, and gave him the freedom to commit a difficult-to-detect wrong. *Id.* at 929–30. *See also United States v. Lowder,* 5 F.3d 467, 473 (10th Cir. 1993) (finding that the president of a bogus financial company who was entrusted with the ability to spend the investors' money without any oversight held a position of trust).

■ The facts of *Queen* are analogous to the instant case. Here, Appellant used his position of control in Escrow Closing Services to defraud his victim. Appellant was able to facilitate the fraud by lulling U.S. Mortgage into believing the $882,000 was safe because the transfer was to an escrow account. Appellant was later able to conceal the fraud from U.S. Mortgage because of its continuing belief that the money had been transferred into an escrow relationship, protected by a fiduciary. *See generally Schoepe v. Zions First Nat. Bank,* 750 F.Supp. 1084, 1088 (D.Utah 1990) (an "escrow agent owes a fiduciary duty to all parties to the escrow agreement"), *aff'd without opinion,* 952 F.2d 1401 (10th Cir.1992). Appellant's ability to misappropriate funds from the escrow account arose because of his control of Escrow Closing Services; his unlimited discretion over these funds enabled him to remove them from the escrow account and breach Escrow Closing Services's fiduciary duty to U.S. Mortgage. Although, strictly speaking, the fiduciary relationship here was between Escrow Closing Services and U.S. Mortgage, the district court correctly found that Appellant's complete control over Escrow Closing

Services put him in a position to abuse the formal trust it had created with the victim. *See Lowder,* 5 F.3d at 473 (finding defendant's position as president of the defrauding investment company allowed him to misappropriate funds, putting him in a position of trust).

## CONCLUSION

The district court's determination that Appellant occupied a position of trust is not clearly erroneous, and the enhancement is appropriate. AFFIRMED.

BRISCOE, Circuit Judge, dissenting:

Because I find that the facts of this case do not satisfy the requirements of § 3B1.3 of the United States Sentencing Guidelines, I respectfully dissent.

Section 3B1.3 of the Sentencing Guidelines provides in pertinent part: "If the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels." In order to sustain the district court's decision to enhance Appellant's sentence based upon § 3B1.3, we must therefore find: (1) that he occupied a position of public or private trust; and (2) that he abused that position of trust in a manner that significantly facilitated the commission or concealment of the offense at issue in this case. *See United States v. Queen,* 4 F.3d 925, 927 (10th Cir.1993), *cert. denied* — U.S. —, 114 S.Ct. 1230, 127 L.Ed.2d 575 (1994). Reviewing the record on appeal, I am compelled to find in favor of the Appellant on both of these factors.

Neither § 3B1.3 nor its accompanying application notes defines what is meant by a "position of trust." *Queen,* 4 F.3d at 928. We have previously indicated, however, "that the question of whether an individual occupies a position of trust should be addressed from the perspective of the victim." *Id.* at 929. We have further outlined the following non-exhaustive list of factors that should be considered in determining whether a defendant occupied a "position of trust" for purposes of § 3B1.3:

[T]he extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; defendant's duties as compared to those of other employees; defendant's level of specialized knowledge; defendant's level of authority in the position; and the level of public trust.

*United States v. Williams,* 966 F.2d 555, 557 (10th Cir.1992). It is undisputed here that the position of trust at issue is an alleged position of private trust, not a position of public trust. The district court found that the crime of wire fraud was made possible by Appellant's control over the escrow account. Therefore, the fiduciary or personal trust relationship which is the basis for Appellant's two-level enhancement is the fiduciary or trust relationship between U.S. Mortgage and Appellant acting through Escrow Closing Services.

Due in large part to the fact that Appellant pled guilty, we are privy to the general facts of Appellant's crime, but not to many of the significant underlying details. In particular, we do not know whether Appellant, in inducing U.S. Mortgage to wire money to Escrow Closing Services' account, informed it that he was a principal in Escrow Closing Services, or whether he misled U.S. Mortgage into believing that Escrow Closing Services was an independent entity that would act as an escrow agent for the transaction. To me, these facts are significant because they determine whether, in the eyes of U.S. Mortgage, this remained an arms-length commercial transaction notwithstanding the involvement of Escrow Closing Services, *see United States v. Brunson,* 54 F.3d 673, 678 (10th Cir.1995) (holding that normal commercial transactions do not fall within the scope of § 3B1.3), *cert. denied* —— U.S. ——, 116 S.Ct. 397, 133 L.Ed.2d 317 (1995), or whether it believed that an independent escrow agent was entering into the transaction to act on its behalf. Although the majority assumes the latter, based presumably upon its understanding of how Appellant structured a "typical transaction," I find it inappropriate to make this assumption.

Even if U.S. Mortgage was told that Escrow Closing Services was a separate entity, Appellant's position as a principal in Escrow Closing Services did not transform the relationship between Appellant and U.S. Mortgage into one of trust under § 3B1.3. Indeed, there is nothing in the evidence outlined in the plea agreement that would indicate the existence of the escrow account was vital to U.S. Mortgage, or that it played a major role in the victim's decision to purchase the loans from Appellant. U.S. Mortgage's primary concern was not that Appellant removed the funds from the account. In fact, U.S. Mortgage wanted that to occur, and expected it to occur. U.S. Mortgage's primary concern was not the removal of the monies from the escrow account, but rather that it did not receive from Appellant the loans for which U.S. Mortgage had supposedly paid. Contrary to the government's assertions, there is nothing about the nature of the relationship between Appellant and U.S. Mortgage that made the crime hard to detect. In fact, it was clear to U.S. Mortgage within days after transmittal of the funds to Escrow Closing Services that something was amiss. U.S. Mortgage wired the funds to Escrow Closing Services on July 12, 1991. When U.S. Mortgage had not received the loan packages from Appellant by July 17, 1991, an employee of U.S. Mortgage called Appellant to ask why the packages had not been received. Simply put, it was not hard for U.S. Mortgage to detect that it had not received what it had paid for.

Because the burden was on the government to demonstrate Appellant occupied a position of trust by a preponderance of the evidence, *see United States v. Okane,* 52 F.3d 828, 835 (10th Cir.1995), and because the factual record is utterly lacking with respect to important details concerning the relationship between Appellant, Escrow Closing Services, and U.S. Mortgage, I am unable to find that Appellant occupied a "position of trust" with respect to U.S. Mortgage. While the district court is entitled to great deference in its factual findings, it is not entitled to that deference in the absence of a record to support those findings.

Even assuming, for purposes of argument, that the facts are sufficient to demonstrate that Appellant occupied a "position of trust" with respect to U.S. Mortgage, § 3B1.3 further requires that defendant abused the position of trust in a manner that significantly aided the commission or concealment of "the offense." U.S.S.G. § 3B1.3; *Queen,* 4 F.3d at 927. Thus, unlike many other sections of the guidelines, § 3B1.3 is focused solely on the charged offense, and not on other related but uncharged conduct.

Here, notwithstanding the fact that he was able to plan and execute to completion his scheme to defraud U.S. Mortgage, Appellant was charged with a single crime: wire fraud in violation of 18 U.S.C. § 1343. Specifically, the predicate wire fraud occurred when "Koehn transmitted and caused to be transmitted by means of wire communication in interstate commerce ... a wire transfer of funds ... from U.S. Mortgage Servicing Corporation in St. Petersburg, Florida, to the account of Real Estate Escrow and Closing Service, Inc., at First National Bank of Southeast Denver."

Under § 1343, wire fraud occurs when a defendant, "having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire, radio, or television communication in interstate ... commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme...." Thus, the elements of the crime of wire fraud are: (1) a scheme to defraud; and (2) use of interstate wire communications to facilitate the scheme. *United States v. Galbraith,* 20 F.3d 1054, 1056 (10th Cir.1994), *cert. denied* — U.S. —, 115 S.Ct. 233, 130 L.Ed.2d 157 (1994). Like the crime of mail fraud, "[t]he government need not prove that the fraud constituted an abuse of a position of trust." *Queen,* 4 F.3d at 928.

Reviewing the facts in light of the essential elements of the crime, it is apparent that the charged wire fraud was complete when the funds were transferred to the Escrow Closing Services account. The subsequent success of Appellant's scheme, including the misappropriation of funds by Appellant from the account, was unnecessary to the proof of the crime. *See, e.g., United States v. Loney,* 959 F.2d 1332, 1337–38 (5th Cir.1992) (showing that victim suffered financial loss is not necessary to support wire fraud conviction); *United States v. Ames Sintering Co.,* 927 F.2d 232, 235 (6th Cir.1990) (actual success is not an element of wire fraud); *United States v. Oren,* 893 F.2d 1057, 1061 (9th Cir.1990) (same). In theory, though perhaps not in practice, Appellant could have been arrested and charged before he took the money from the Escrow Closing Services account.

The long and the short of this is that the alleged abuse on which the majority focuses, *i.e.,* Appellant's misappropriation of U.S. Mortgage's funds, occurred after the charged offense was complete. Thus, the alleged abuse simply did not, and could not, have "significantly facilitated the commission or concealment of the offense," as required by § 3B1.3.

In closing, I must again point out that, at the time he carried out the charged offense, Appellant was not in a position of trust with respect to U.S. Mortgage. Although the majority concludes that "Appellant was able to facilitate the fraud by lulling U.S. Mortgage into believing the $882,000 was safe because the transfer was to an escrow account," this conclusion is neither supported by the evidence in the record, nor is it a logical assumption. At the point in time that Appellant telephoned U.S. Mortgage to sell the loans and directed that the monies be wired to Escrow Closing Services, it is obvious he was acting solely in his capacity as representative of Executive Mortgage, not as representative of Escrow Closing Services; *i.e.,* in the eyes of U.S. Mortgage, Appellant could only have been acting in the capacity of salesman, not as both salesman and escrow agent. In fact, because an escrow agent owes a fiduciary duty to all parties to an escrow agreement, *see Schoepe v. Zions First Nat. Bank,* 750 F.Supp. 1084, 1088 (D.Utah 1990), *aff'd without opinion,* 952 F.2d 1401 (10th Cir.1992), and is intended as a security measure, it would have been illogical for U.S. Mortgage to expect Appellant to act as both seller and escrow agent.

For these reasons, I conclude that it was clearly erroneous for the district court to

enhance Appellant's sentence under § 3B1.3, and I would vacate the sentence and remand for resentencing.