**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES ROBERT STRAUS,

Defendant - Appellant.

No. 98-2186

(D. New Mexico)

(D.C. No. CR-96-660-LH)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **TACHA** , and **BALDOCK** , Circuit Judges.

On February 3, 1998, James Robert Straus pled guilty to one count of wire fraud, a violation of 18 U.S.C. §§ 1343 and 2. He was subsequently sentenced to a term of 21 months' imprisonment and three years' supervised release, and ordered to pay restitution in the amount of $397,050.73. Straus now appeals from this sentence, arguing that (1) the district court erroneously assessed a two-level increase in his base offense level for abuse of a position of trust, pursuant to

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

USSG § 3B1.3, and (2) the district court erroneously refused to depart downward from the applicable guideline range based on Straus's military and public service and community involvement. For the reasons discussed below, we affirm the judgment of the district court in part and dismiss Straus's appeal in part.

## BACKGROUND

In 1988, Straus started a business, based in Albuquerque, New Mexico, called Straus Downing International, Ltd. (SDI). In the beginning, SDI was solely an insurance business, but Straus later expanded the scope of SDI's operations to include the management of retirement investments. In 1991, Straus traveled to Bangkok, Thailand, to meet with officials of the International School of Bangkok (ISB). ISB offered its employees, most of whom were teachers who taught at the school, the opportunity to invest up to 10% of their incomes in a retirement fund, and in 1991 the school was looking for a company to manage the investment fund. Straus made a presentation to ISB officials, and promised them, both orally and in a written brochure, that if they chose SDI to manage their retirement fund, the fund would be insured by Aetna Insurance Company. ISB eventually selected SDI to manage its fund, and in February 1992 began sending funds to SDI.

Between February 1992 and early 1993, ISB sent approximately $34,000 per month, by wire transfer, to a Swiss bank account in Straus's name. Straus "controlled that account and would not allow anyone with [SDI] to contact the Swiss [bank] regarding the balances of the accounts." V R. at 3, ¶ 8.

Soon after ISB began sending money to Straus, ISB officials contacted SDI and requested verification of the Aetna insurance policy which Straus had promised them covered their funds. On April 19, 1992, Straus sent to ISB, by facsimile, a document which he represented to be the Aetna policy covering the retirement funds. The document appeared to bear the signature of an Aetna official. ISB officials assumed the document to be valid, and continued to send monthly wire transfers to the Swiss account.

In early 1993, ISB began to become suspicious of Straus and SDI. ISB's headmaster met with Straus in Munich, Germany, in May 1993 to confirm that the funds were still intact. During that meeting, Straus wrote the headmaster a check, drawn on an account in an Albuquerque bank, for $383,087. When ISB officials attempted to deposit this check, however, it was returned for insufficient funds. ISB officials then contacted Straus and asked him where their money was, and Straus answered that it was "tied up." Id. at 4, ¶ 11. Subsequently, ISB learned that SDI had no money in its accounts, and could not produce the investment funds.

ISB then attempted to pursue a claim against Aetna, the company which ISB thought had issued a policy insuring their funds. When ISB officials contacted Aetna, however, they learned that Aetna had issued no such policy, and that the policy transmitted to them in April 1992 was fraudulent.

A federal investigation ensued, and, on November 7, 1996, a grand jury returned an indictment charging Straus with four counts of wire fraud. On February 3, 1998, Straus and prosecutors entered into a plea agreement. Straus agreed to plead guilty to one count of wire fraud, and the government agreed to dismiss the remaining counts.

On March 24, 1998, a federal probation officer submitted Straus's Presentence Investigation Report (PSR). The report stated that Straus's base offense level, pursuant to USSG § 2F1.1(a), was 6. Section 2F1.1(b), however, mandated a nine-level increase because the amount of money involved was greater than $350,000. The report recommended that Straus's offense level be further increased by two levels, pursuant to USSG § 2F1.1(b)(2), because the offense involved more than minimal planning, and by another two levels, pursuant to USSG § 3B1.3, because Straus abused a position of trust. After subtracting three levels for acceptance of responsibility, pursuant to USSG § 3E1.1, the report concluded that Straus's adjusted offense level should be 16. With a criminal

history category of I, the relevant guideline range was 21-27 months' imprisonment.

Straus filed several objections to the PSR, only one of which is relevant to this appeal. In this objection, he argued that the two-level increase for abuse of a position of trust was unwarranted, and in any event constituted double counting because the reasons for such an increase were already taken into account by the increase for more than minimal planning. Straus also moved the district court for a downward departure from the applicable guideline range, based on Straus's military and civil service record.

The district court held a sentencing hearing on June 10, 1998. The district court overruled Straus's objection to the PSR, finding that the abuse of trust increase was warranted, and stating that "the application of [the abuse of trust and the more than minimal planning] enhancements in [this] case . . . are not double counting" because they "apply to different purposes." IV R. at 17. The district court also denied Straus's motion for a downward departure. The court sentenced Straus to 21 months' imprisonment, an amount at the lower end of the guideline range, and three years' supervised release. Additionally, the court ordered that Straus pay restitution in the amount of $397,050.73.

Straus now appeals from the district court's decisions to impose the two-level enhancement for abuse of a position of trust, and to deny the requested downward departure.

## DISCUSSION

### I.  The Abuse of Trust Enhancement

Straus's first contention is that the district court misapplied the abuse of trust enhancement.  Straus's argument on this point is twofold.  First, Straus argues that this case is merely a "garden variety" fraud case, Appellant's Br. at 17, and that therefore the abuse of trust enhancement should not have been applied.  Second, and alternatively, Straus argues that the application of the abuse of trust enhancement in this case constitutes double counting, because he asserts that the reasons behind the abuse of trust enhancement in this case are similar to the reasons behind the enhancement for more than minimal planning.

#### A.  Did the District Court Correctly Apply the Abuse of Trust Enhancement?

"This court reviews the question of whether an individual occupied a position of trust in a particular transaction for clear error."    United States v. Trammell , 133 F.3d 1343, 1355 (10th Cir. 1998).

By its terms, USSG § 3B1.3 applies "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." The Sentencing Commission has explained that

> "[p]ublic or private trust" refers to a position of public or private trust characterized by professional or managerial discretion ( i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense ( e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).

USSG § 3B1.3, comment. (n.1).

Straus correctly argues that this enhancement was not intended to be applied, categorically, to every case of fraud. See United States v. Koehn , 74 F.3d 199, 201 (10th Cir. 1996) (stating that "[i]n every successful fraud the defendant will have created confidence and trust in the victim, but the sentencing enhancement is not intended to apply in every case of fraud"). We have, however, typically upheld application of the guideline in two types of fraud cases: (1) "where the defendant steals from his employer, using his position in the company to facilitate the offense"; and (2) "where a 'fiduciary or personal trust relationship exists' with other entities, and the defendant takes advantage of the

relationship to perpetrate or conceal the offense." Id. (quoting United States v. Brunson, 54 F.3d 673, 677 (10th Cir. 1995).

This case fits within the second category of cases. Here, Straus was in a "fiduciary or personal trust relationship" with ISB, because it had entrusted him with supervision and management of its retirement funds. Straus had personally represented to ISB officials that the funds were insured, and had even transmitted to ISB a forged Aetna insurance policy to prove the existence of the insurance. In addition, Straus was the CEO of SDI, and had undisputed authority over the financial affairs of the corporation. The record also reflects that Straus had exclusive control over the Swiss bank account into which the ISB funds were deposited, and that he refused to allow other SDI employees any contact with the Swiss bank. In short, ISB trusted Straus with the safekeeping of its funds, and Straus used this fiduciary position and particularly his exclusive control of the Swiss account both to perpetrate the fraud and to conceal it.

The conclusion of the district court that Straus occupied a position of trust, and then abused that trust, comports with our previous case law. See Trammell, 133 F.3d at 1355-56 (holding that an insurance agent who solicited funds from investors by representing that he would purchase annuities for them, and then spent the funds for his own benefit, abused a position of trust); United States v. Lowder, 5 F.3d 467, 473 (10th Cir. 1993) (holding that a CPA who provided tax

advice to elderly and unsophisticated clients and who encouraged them to invest in sham corporations of which he was president abused his position of trust); United States v. Queen, 4 F.3d 925, 929 (10th Cir. 1993) (holding that a person who falsely purported to be an investment advisor/broker abused a position of trust); cf. Koehn, 74 F.3d at 202 (holding that a mortgage officer with authority over escrow accounts abused a position of trust when he misappropriated funds from those escrow accounts); United States v. Johnson, 4 F.3d 904, 916-17 (10th Cir. 1993) (holding that a bank vault teller abused a position of trust when she helped to facilitate a robbery of the vault with which she had been entrusted). We cannot say that the district court committed clear error when it found that Straus occupied and violated a position of trust.

### B. Did the Application of the Abuse of Trust Enhancement Constitute Double Counting?

Straus next argues that the application of the abuse of trust enhancement and the application of the enhancement for more than minimal planning constituted double counting, because the bases for the two enhancements are similar. The district court's determination that application of the two enhancements was not double counting is a "purely legal interpretation of the Sentencing Guidelines," which we review de novo. United States v. Duran, 127 F.3d 911, 916 (10th Cir. 1997).

We have stated that impermissible double counting occurs only when (1) the same conduct is used to support two enhancements, and (2) the two enhancement provisions "necessarily overlap, are indistinct, and serve identical purposes." United States v. Rice, 52 F.3d 843, 850-51 (10th Cir. 1995) (quoting United States v. Flinn, 18 F.3d 826, 829 (10th Cir. 1994)). We have stressed that the three requirements of the second prong are phrased in the conjunctive, and that "[w]hen a defendant's sentence is enhanced multiple times for a seemingly single act, impermissible double counting occurs only if the enhancements necessarily overlap, are indistinct, and serve identical purposes." United States v. Rucker, – F.3d. –, –, 1999 WL 373212, at *2 (10th Cir. June 9, 1999) (emphasis in original). Indeed, "'[d]ouble counting is permissible if it accounts for more than one type of harm caused by the defendant's conduct or where each enhancement of the defendant's sentence serves a unique purpose under the guidelines.'" Id. at –, 1999 WL 373212, at *3 (quoting United States v. Parker, 136 F.3d 653, 654 (9th Cir.), cert. denied, 119 S. Ct. 363 (1998)).

Even if we assume that Straus is correct that the same conduct was used to support both enhancements, a proposition that is by no means obvious in this case, we would still be compelled to conclude that the enhancements were proper. USSG §§ 2F1.1(b)(2)(A) and 3B1.3 do not necessarily overlap, are not indistinct, and do not serve identical purposes. The enhancement for more than minimal

planning is "designed to target criminals who engage in complicated criminal activity because their actions are considered more blameworthy and deserving of greater punishment than a perpetrator of a simple version of the crime." Rice, 52 F.3d at 851. The abuse of trust enhancement, by contrast, is "primar[ily] concern[ed with] penalizing defendants who take advantage of a position that provides them with the freedom to commit a difficult-to-detect wrong." Queen, 4 F.3d at 929. Indeed, "one can abuse a position of trust with minimal planning. Similarly, an individual, such as a[n ordinary] bank teller who embezzles money with an extensive plan, can engage in more than minimal planning without abusing a position of trust." United States v. Berridge, 74 F.3d 113, 118 (6th Cir. 1996). If an offender both abuses a position of trust and engages in more than minimal planning while doing so, that offender's sentence can properly be enhanced under both USSG §§ 2F1.1(b)(2)(A) and 3B1.3, even if the same conduct is used to justify both enhancements.

Therefore, we conclude that the district court did not err by enhancing Straus's sentence for abusing a position of trust, and that the district court did not engage in impermissible double counting in assessing the enhancement.


## II. The Motion for Downward Departure

-11-

Straus next challenges the district court's decision to deny his motion, based on Straus's military and civil service record, for a downward departure from the applicable guideline range. Factors such as a defendant's military and civic record are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." USSG § 5H1.11. However, a district court may depart downward on the basis of such "discouraged" factors "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." United States v. Collins, 122 F.3d 1297, 1302 (10th Cir. 1997) (quoting Koon v. United States, 518 U.S. 81, 96 (1996)).

We are, however, without "jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." United States v. Castillo, 140 F.3d 874, 887 (10th Cir. 1998). Therefore, we may review the district court's decision not to depart downward in this case only if the district court, ignoring Koon and Collins, erroneously determined that it had no authority to depart downward on the basis of any defendant's military and civic record.

The record demonstrates that the district court was aware that Koon allows a court to depart downward on the basis of military and civic accomplishments, but only in exceptional cases. At the beginning of his argument on the matter, Straus's counsel told the court as much, and, at the conclusion of his argument, Straus's counsel even cited Koon. IV R. at 18-21.

In denying Straus's motion for a downward departure, the district court made the following statement:

> Well, I commend Mr. Straus for his bravery while in the service of the United States and the other good deeds he has done [and] has accomplished. And while that may be a basis for adjusting a sentence within a guideline range, I conclude that it is not a valid reason under case law that has been cited to me by the government on downward departures, to be a legitimate basis for a downward departure. And I also believe that this is within my discretion. I would decline to exercise my discretion for downward departure. . . . I will deny the motion for downward departure.

IV R. at 26. Focusing on the part of the statement where the court stated that "while that may be a basis for adjusting a sentence within a guideline range, I conclude that it is not a valid reason under case law that has been cited to me by the government on downward departures, to be a legitimate basis for a downward departure," Straus argues that the district court determined that it had no authority to depart downward. We disagree.

Straus ignores the next part of the statement, where the court stated that "I also believe that this is within my discretion [and] I would decline to exercise my

-13-

discretion for downward departure." When we consider the court's statement as a whole, including the context in which the statement was made—the court was aware of <u>Koon</u> and counsel had plainly stated, on multiple occasions, that departure was warranted under these circumstances in exceptional cases—it is plain that the court understood that it had discretion to depart downward on the basis of military and civic accomplishments, but that the circumstances of Straus's case were not so exceptional as to justify such a departure. Therefore, we have no jurisdiction to review the district court's decision not to depart downward.

## CONCLUSION

For the foregoing reasons, we AFFIRM that portion of the district court's judgment and sentence pertaining to the abuse of trust enhancement, and we DISMISS for lack of jurisdiction that portion of Straus's appeal which challenges the district court's decision not to depart downward.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge