**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-4383**

---

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

JOHN COLEMAN REID,

                              Defendant - Appellant.

---

**No. 04-4384**

---

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

ALAN B. PINKERTON,

                              Defendant - Appellant.

---

Appeals from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., Senior District Judge. (CR-04-13)

---

Submitted: November 30, 2005          Decided: January 6, 2006

---

Before WILKINSON, NIEMEYER, and LUTTIG, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

Frederick T. Heblich, Jr., Charlottesville, Virginia; Francis McQ. Lawrence, ST. JOHN, BOWLING & LAWRENCE, Charlottesville, Virginia, for Appellants. John L. Brownlee, United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

John Coleman Reid and Alan B. Pinkerton pled guilty to bank fraud, 18 U.S.C. § 1344 (2000), and were sentenced to terms of forty-six months and thirty-seven months imprisonment, respectively. On appeal, Appellants challenge the two-level adjustment for abuse of a position of trust that the district court applied in each case under U.S. Sentencing Guidelines Manual § 3B1.3 (2003). We affirm.

Reid was hired in 1996 as president of the Ivy Tygart Acquisition Corporation (ITAC), which was located in Charlottesville, Virginia, and known locally as Ivy Industries. Pinkerton was the chief financial officer. Reid and two investors, Francis Parker and Corwith Davis, formed RPD Enterprises, which acquired all the stock of ITAC in February 1998. In 1999, another company they owned, RPD Properties, acquired the real property of ITAC. Beginning in 2000, because Ivy Industries had been experiencing cash flow problems since 1996, Reid and Pinkerton began kiting checks between company accounts at Albemarle First Bank and SunTrust Bank to create false positive balances at both banks. Reid also created false financial statements for ITAC that misrepresented the company's inventory and assets, which helped him to secure two loans from Virginia National Bank totaling $1,020,000, a $ 2,000,000 loan from Guaranty Bank, and a $795,000 loan from Albemarle First Bank. In 2003, Reid forged the signature

of Corwith Davis to obtain a $500,000 loan from Southern Financial Bank.  When the check kiting scheme was discovered in 2003, Albemarle First Bank suffered a financial loss of $2,420,000, of which $100,000 was paid by Progressive Insurance.  The company ceased operations and its inventory was liquidated to recover some of the loss suffered by Guaranty Bank.

Reid and Pinkerton pled guilty to bank fraud in February 2004 and were sentenced in May 2004.  The district court calculated Reid's base offense level at 6, U.S. Sentencing Guidelines Manual § 2B1.1 (2002), with an 18-level enhancement for a loss over $2.5 million, USSG § 2B1.1(b)(1)(J), and a 2-level adjustment for abuse of a position of trust, USSG § 3B1.3.  Reduced by three levels for acceptance of responsibility, USSG § 3E1.1, Reid's recommended offense level was 23.  He was in criminal history category I, making his guideline range 46-57 months.  Pinkerton's calculation was the same, except that he was held responsible for a loss of only $2,420,000, which gave him an offense level of 21 and a guideline range of 37-46 months.  The court deferred the issue of restitution because the parties were not ready to resolve it.  On November 3, 2005, the court ordered Reid to make restitution to the four victim banks, Corwith Davis, Francis Parker, and Progressive Insurance Company.  Pinkerton was ordered to make restitution to Albemarle First Bank, Corwith Davis, and Progressive Insurance

Company.  The amount of restitution owed to Davis and Parker was approximately $1.5 million.

At their respective sentencing hearings on May 10, 2004, the district court determined that Reid and Pinkerton each held a position of trust with respect to the victim banks.  In a memorandum opinion filed a week later, the court explained the adjustment differently, finding that there were two categories of victims.  The court found that, while the banks were the primary and direct victims, a second category of victims consisted of Davis and Parker, the co-owners of Ivy Industries, as well as the employees and shareholders in the corporation.  The court determined that Reid and Pinkerton had a position of trust in relation to the secondary group of victims.

On appeal, Reid and Pinkerton argue for the first time that the district court's use of the sentencing guidelines to enhance their sentences for abuse of a position of trust violated the Sixth Amendment under Blakely v. Washington, 542 U.S. 296 (2004).  They also contend that the district court erred in finding that they possessed a position of trust with respect to the banks that were the victims of the check kite or were induced by fraud to make bad loans, and that the secondary victims identified by the court were not victims of the offense within the meaning of § 3B1.3.

Appellants were sentenced before the Supreme Court decided Blakely or United States v. Booker, 125 S. Ct. 738 (2005). In Booker, the Supreme Court held that Blakely applies to the federal sentencing guidelines and that the mandatory guidelines scheme which provides for sentence enhancements based on facts found by the court violated the Sixth Amendment. 125 S. Ct. at 746, 750. This court has identified two types of Booker error: a violation of the Sixth Amendment, and a failure to treat the sentencing guidelines as advisory.[*] United States v. Hughes, 401 F.3d 540, 552 (4th Cir. 2005). A Sixth Amendment error occurs when the district court imposes a sentence greater than the maximum permitted based on facts found by a jury or admitted by the defendant. Booker, 125 S. Ct. at 756. Because Appellants did not raise a Sixth Amendment challenge in the district court, our review is for plain error. Hughes, 401 F.3d at 547.

Without the contested two-level enhancements for abuse of a position of trust under § 3B1.3, Reid's offense level would have been 24 and Pinkerton's offense level would have been 22. For purposes of determining Booker error, this court uses the guideline range based on the facts the defendant admitted before the range is

---

[*]While the mandatory application of the guidelines constitutes plain error, a defendant who seeks resentencing on this ground must show actual prejudice. United States v. White, 405 F.3d 208, 217, 223 (4th Cir.), cert. denied, ___ S. Ct. ___, 2005 WL 3027841 (U.S. Nov. 14, 2005) (No. 05-6981). Appellants do not attempt to show error under White.

adjusted downward for acceptance of responsibility. <u>United States v. Evans</u>, 416 F.3d 298, 300 n.4 (4th Cir. 2005). Reid's guideline range under this analysis would have been 51-63 months and Pinkerton's guideline range would have been 30-37 months. Reid's sentence of forty-six months imprisonment and Pinkerton's sentence of thirty-seven months imprisonment are thus within the range that would apply based only on facts that they admitted. We conclude that no Sixth Amendment error occurred.

We review the district court's factual findings that support the adjustment for abuse of a position of trust for clear error, while its legal interpretation of the guideline is reviewed de novo. <u>United States v. Caplinger</u>, 339 F.3d 226, 235-36 (4th Cir. 2003). The guideline provides for an adjustment when "the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. Application Note 1 explains that "[p]ersons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." Further, their position "must have contributed in some significant way to facilitating the commission or concealment of the offense (<u>e.g.</u>, by making the detection of the offense or the defendant's responsibility for the offense more difficult)." <u>Id.</u>

The district court's focus in making its determination must be on "the relationship between the defendant and the victim from the perspective of the victim." Caplinger, 339 F.3d at 236 (citing United States v. Gordon, 61 F.3d 263, 269 (4th Cir. 1995)). A "victim" is currently defined in Application Note 1 to USSG § 1B1.1 as "any person who sustained any part of the actual loss," that is, the reasonably foreseeable pecuniary harm. "In every case of fraud, the defendant will have [gained the] confidence and trust [of] the victim. But fraud alone does not justify the enhancement." Id. at 237 (quoting United States v. Bollin, 264 F.3d 391, 415 (4th Cir. 2001)). "A sentencing court must 'carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity,'" id. (quoting Bollin, 264 F.3d at 415), "and those 'where a fiduciary or personal trust relationship exists' with [the victim], and the defendant takes advantage of the relationship to perpetrate or conceal the offense.'" Id. (quoting United States v. Koehn, 74 F.3d 199, 201 (10th Cir. 1996)). Thus "application of the enhancement requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary function is required." Id. (quoting United States v. Brunson, 54 F.3d 673, 678 (10th Cir. 1995)). In Bollin, this court quoted with approval United States v. Davuluri, 239 F.3d 902, 909 (7th Cir. 2001), for the principle that "what

distinguishes situations in which § 3B1.3 should apply is 'whether the defendant has broad discretion to act on behalf of the victim and the victim believes the defendant will act in the victim's best interest.'"  Bollin, 264 F.3d at 416.

Here, the adjustment cannot be affirmed on the ground that Reid and Pinkerton had a position of trust with respect to the banks that were victimized by the check kite and induced to make loans in reliance on false information.  All the transactions between representatives of Ivy Industries and the victim banks were part of an arms-length commercial relationship that is not within the scope of § 3B1.3.  Bollin, 264 F.3d at 415.

The district court's later explanation of the adjustment as based on Reid's and Pinkerton's position of trust within Ivy Industries and their betrayal of that trust, resulting in financial loss for Davis and Parker in particular, provides a better ground for affirming the adjustment.  In United States v. Akinkoye, 185 F.3d 192 (4th Cir. 1999), this court upheld an adjustment under § 3B1.3 for a defendant convicted of credit card fraud who had stolen information from homes he entered in his capacity as a real estate agent.  Although the primary victims of his crime were the banks that issued the credit cards and ultimately bore the financial loss, the homeowners who trusted the real estate agency to represent their interests were also victims.  Id. at 204-05.  In this case, as president and chief financial officer, Reid and

Pinkerton had broad discretion to act on behalf of the company and were in a position to carry out a difficult-to-detect wrong because they had authority over the company's bank accounts and acted apparently without supervision. Their actions caused considerable financial losses to the co-owners, Davis and Parker, who had reposed a trust in them that was close to a fiduciary one. We conclude that they each held a position of trust with respect to Davis and Parker, see Caplinger, 339 F.3d at 237, and abused it. Although the district court did not provide this justification for the adjustment until after the sentencing hearings, we may affirm a sentence for any reason appearing in the record. United States v. Swann, 149 F.3d 271, 277 (4th Cir. 1998).

We therefore affirm the sentences imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED